THE TEXAS COMPANY (CARIBBEAN) LTD., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17621.   Promulgated May 31, 1949.

*Clayton E. Turney, Esq.*, for the petitioner.
*Walt Mandry, Esq.*, for the respondent.

OPINION.

KERN, *Judge*: In this proceeding respondent determined a deficiency in petitioner's income tax for the calendar year 1938 in the amount of $1,302.53. Petitioner's sole assignment of error is that the deficiency is barred by the limitation provisions of section 275 (a) of the Revenue Act of 1938. The notice of deficiency was mailed on December 29, 1947, after the expiration of the period of limitation

prescribed in the section. Respondent's answer is that the deficiency arises under section 131 (c) of the 1938 Act, and hence the period of limitation is inapplicable. Stated narrowly, the issue is whether or not the claimed deficiency does fall within section 131 (c). If it does, petitioner concedes that the deficiency should be sustained in full.

All of the facts have been stipulated and are hereby found accordingly.

Petitioner, a Delaware corporation, filed its income and excess profits tax return for the calendar year 1938 with the collector for the district of Delaware on June 8, 1939. It kept its books and rendered its tax returns on the accrual basis.

In its 1938 return petitioner reported net income of $76,269.65 and a total tax liability of $12,584.49. It also claimed therein a credit for income taxes paid to a foreign country (the Government of Jamaica) in the amount of $1,554.62, leaving a balance of tax of $11,-029.87, which amount was assessed and paid. In a schedule attached to the return petitioner stated that "Receipts for the amount of $1,-554.62, claimed as a credit in this return, are not yet available, but will be filed with Form 1118 at a later date."

On January 2, 1940, petitioner made actual payment to the Government of Jamaica of income taxes levied by that government for the calendar year 1938 in the amount of £2,747–15–4. Thereafter, petitioner filed for the year 1938 Form 1118 (Statement in Support of Credit Claimed by Domestic Corporation for Taxes Paid or Accrued to a Foreign Country or a Possession of the United States), to which was attached a photostatic copy of the receipt for payment of taxes to Jamaica in the amount of £2,747–15–4. On the form it was stated that the amount of taxes paid to a foreign country was in the amount of £2,747–15–4. It was also reported on Form 1118 that by using a rate of exchange of $4.639791, the rate of exchange in effect on December 31, 1938, the amount of Jamaican taxes paid, converted into American dollars, equaled $12,749.06, limited by section 131 (b) (1) to a credit of $12,161.37.

On May 26, 1942, petitioner filed with the collector for the district of Delaware a claim for refund of Federal income tax for the calendar year 1938 in the amount of $10,606.75, based upon the allowability of credit under section 131 of the Revenue Act of 1938, in the amount of $12,161.37, with respect to the taxes paid to Jamaica in 1940. In the statement attached to the claim for refund, the following appeared:

In the Income and Excess Profits Tax Return, duly filed by this corporation for the calendar year 1938, there was claimed, as a credit for income taxes paid to a foreign country, the amount of $1,554.62, whereas the correct amount of such credit allowable is $12,161.37. Claim is now made for a refund of the difference, amounting to $10,606.75.

On March 30, 1943, petitioner received a refund of Federal income tax for 1938 in the amount of $10,265.01, based upon a certificate of overassessment issued by respondent.[1]

The deficiency in this proceeding arises out of a redetermination by respondent that the credit for income taxes for the calendar year 1938 paid to Jamaica on January 2, 1940, should be $10,858.84, instead of the amount of $12,161.37, which was allowed in computing the refund. The amount now said by respondent to be correct is determined by him by applying to the Jamaican tax payment an exchange rate of $3.95188, the rate of exchange in effect on January 2, 1940, the date of the payment of the tax to Jamaica, and not the rate of exchange employed by petitioner, which was the rate in effect on the last day of the taxable year involved.

Section 131 (c) of the Revenue Act of 1938, which concerns itself with adjustments on payment of accrued taxes of foreign countries, provides, in part, as follows: [2]

If accrued taxes when paid differ from the amounts claimed as credits by the taxpayer, or if any tax paid is refunded in whole or in part, the taxpayer shall notify the Commissioner, who shall redetermine the amount of the tax for the year or years affected, and the amount of tax due upon such redetermination, if any, shall be paid by the taxpayer upon notice and demand by the collector, or the amount of tax overpaid, if any, shall be credited or refunded to the taxpayer in accordance with the provisions of section 322. * * *

It is not disputed in this proceeding that in cases properly cognizable under section 131 (c) the general provisions of limitation contained in section 275 (a) are inapplicable,[3] and we so held in *Pacific Metals Corporation*, 1 T. C. 1028.

The parties also recognize that only two general situations are covered by section 131 (c) : (1) Where the amount of foreign tax when paid differs from the amount claimed as a credit; and (2) where the taxpayer receives a refund of foreign tax, which he previously claimed as a credit. They also agree that this proceeding does not fall within

---

[1] The refund received was $341.74 less than that claimed, and was due to an adjustment in the ratio of income from a foreign country to total income from all sources ; this adjustment is not in issue here.

[2] The credit for foreign taxes is allowed in section 131 (a) :
"SEC. 131. TAXES OF FOREIGN COUNTRIES AND POSSESSIONS OF UNITED STATES.
"(a) ALLOWANCE OF CREDIT.—If the taxpayer signifies in his return his desire to have the benefits of this section, the tax imposed by this title shall be credited with :
"(1) CITIZEN AND DOMESTIC CORPORATION.—In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war-profits, and excess-profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States ;
* * * * * * *

[3] SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.
* * * * * * *
(a) GENERAL RULE.—The amount of income taxes imposed by this title shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

the second situation. The parties disagree as to whether it falls within the first.

It is respondent's position that this case involves an adjustment under the first situation; whereas petitioner urges to the contrary, and concludes that section 131 (c) is not involved, and the limitation of section 275 (a) is therefore applicable.

In brief, what occurred is this: Petitioner claimed on its 1938 tax return a credit for foreign tax in the amount of $1,554.62. It also advised respondent that the data to support the credit was not then available, and Form 1118 would be filed at a later date when the information was available. On January 2, 1940, it paid such taxes, in the amount of £2,747-15-4 which, according to the rate of exchange prevailing at the date of payment, was convertible to American dollars in the amount of $10,858.84. By the erroneous use [4] of the rate of exchange prevailing at the last day of the year for which the taxes were paid, petitioner claimed on Form 1118 and on its claim for refund a foreign tax payment converted to American dollars in the amount of $12,161.37. It did, however, correctly report on Form 1118 the amount of foreign taxes in the foreign currency, as required. Respondent, perpetuating the error of the use of the rate of exchange prevailing on December 31, 1938,[5] made in 1943 the refund as claimed by petitioner. Upon discovering his error after the limitation for recovery of an erroneous refund had run, respondent now seeks to correct the error by maintaining that this proceeding falls under section 131 (c), to which the limitation provisions generally do not apply.

The present deficiency did not result from the fact that the amount of the foreign taxes paid was a lesser amount than the credit claimed on Form 1118, or was in a lesser amount than the credit claimed in its return. The foreign taxes paid were seven times greater than the credit claimed in its return, so that, without doubt, it would have been entitled to a refund in accordance with the provisions of sections 131 (c) and 322. What happened as a result of the use of the erro-

---

[4] Petitioner admits its error. The general rule is that the amount of credit is to be computed by using the rate of exchange at the time of payment and not at the last day of the taxable year involved. *D. E. Brown,* 1 B. T. A. 446; *Mead Cycle Co.,* 10 B. T. A. 887, 897; *Bon Ami Co.,* 39 B. T. A. 825, 826. However, the fact that petitioner erred in his computation is not shocking in view of I. T. 1645 (C. B. II-1, 141), which held: "A taxpayer who keeps his books and files his returns * * * on the accrual basis should use the rate of exchange in effect on the last day of his taxable year in claiming a credit for taxes accrued to a foreign country." A different exchange rate is proper (as is now recognized by petitioner) when the tax is actually paid.

[5] Determination of official exchange rates for customs purposes is left to the Federal Reserve Bank of New York, which certifies rates daily to the Secretary of the Treasury. The latter makes them public at such times and to such extent as he deems necessary. 31 U. S. C. A., ¶372. See *Barr* v. *United States,* 324 U. S. 83.

neous exchange rate [6] in converting the amount of foreign taxes paid into terms of American currency was that petitioner received a greater refund than that to which it was legally entitled—greater by $1,302.53, the amount of the deficiency involved. Whether these circumstances remove this proceeding from the ambit of section 131 (c) and permit it to remain within the general limitation provisions of section 275 (a) is really the problem posed.

The legislative history of section 131 (c) on this problem is unilluminating.[7] Its purpose was generally stated in *Pacific Metals, supra*, at page 1030:

\* \* \* Section 131 (c) is a special provision and its terms are clear. It operates to postpone the time for the payment of the net balance of the domestic income tax for a particular year until the collector has made demand upon the taxpayer for payment of the balance of the domestic tax due after the taxpayer has ascertained the correct amount of the foreign tax and has notified the Commissioner of the correct amount. Reading (c) with (a) of section 131, the credit under (a) initially taken is a provisional or interim credit, subject to correction by the taxpayer himself. Since subsection (c) imposes upon the taxpayer the duty of notifying the Commissioner of the facts relating to the correct amount of the foreign tax and imposes upon the taxpayer the obligation of paying any balance found to be due on the domestic income tax, it should be regarded as a supplement to the statutory provisions relating to the time for paying tax. See section 56 (a) and (b). For that reason the limitation on assessment and collection of tax has no application to section 131 (c) under the facts. \* \* \*

What section 131 (c) apparently authorizes is the assessment of additional tax or the making of a refund, dependent upon whether the accrued taxes when paid, including any refunding thereof, are less than or exceed the claimed credit. Here, the taxes paid exceeded the

---

[6] Petitioner complied with the statutory requirement of notifying respondent. It completed Form 1118, stating the amount of taxes paid "in the currency of the foreign country" and gave the "rate of exchange used." The instructions on the form itself required the attachment of a "statement describing in reasonable detail why and how this particular rate was determined "

[7] A provision comparable to section 131 (c) was added by the Revenue Act of 1918, by sections 222 (b) and 238 (a). The Conference Committee Report (House Rept. No. 1037, 65th Cong., 3d sess., pp. 53, 54) explained the addition :

"\* \* \* The amendment as agreed to also provides that if such accrued taxes when paid differ from the amounts claimed as credits by the taxpayer, or if the tax paid is refunded in whole or in part, the taxpayer shall notify the Commissioner of Internal Revenue, who shall redetermine the amount of the tax due, and the amount of the tax due shall be paid by the taxpayer, or the amount of the tax overpaid shall be credited or refunded to the taxpayer."

In House Report No. 2087, 80th Cong., 2d sess., p. 26, the Ways and Means Committee Report on the Revenue Revision Act of 1948, which passed the House but was not acted on by the Senate, the purpose of the section was discussed :

"Section 131 of the Internal Revenue Code, relating to taxes of foreign countries and possessions of the United States, provides, subject to certain limitations, that in the case of citizens of the United States and domestic corporations there shall be credited against United States income tax the amount of any income and excess profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States. It is further provided that if accrued taxes when paid differ from the amounts claimed as credits by the taxpayer, or if any tax paid is refunded, the amount of the tax for the year or years affected shall be redetermined, with an adjustment for the difference between the amount for which the credit for the foreign tax was taken and the amount of the foreign tax paid or refunded."

earlier claimed credit, so that a refund of income tax was in order. The statute, we observe, merely required that "the taxpayer signifies in his return his desire to have the benefits of this section." It would be sufficient even if in the return a "desire to claim a credit" was signified and no amount was given. Regulations 101, article 131–3, provides:

> If it is the desire of the taxpayer to claim as a credit and not as a deduction accrued income, war-profits, and excess-profits taxes imposed by the authority of any foreign country or possession of the United States but at the time the return is made it is impossible to estimate the amount of such taxes that may have accrued for the period for which the return is made, Form 1116 in the case of an individual, and Form 1118 in the case of a corporation, may be filed at a later date but a credit cannot be allowed for such taxes unless the taxpayer signifies in his return his desire to have to any extent the benefits of section 131.

Thus we see that the amount of the claimed credit is to be garnered not from the return alone, but rather from the information on Form 1118. From the earliest regulations on the subject (Regulations 45, arts. 381–385, 611) to the current ones (Regulations 111, sec. 29.131), the importance of the form as the source of information and notification is stressed.

Until and unless the taxpayer ascertains the correct amount of the foreign tax and informs the respondent of the correct amount of the foreign tax, there is no limitation on the assessment and collection of the tax postponed by the erroneous taking of a credit under section 131 (c). *Pacific Metals Corporation, supra.* In only two other situations is there no period of limitation on the assessment and collection of income taxes, viz., where there is a fraudulent return filed, and where there is no return filed. These are situations covered specifically by statute. See sec. 276, I. R. C. That public policy requires, as a general rule, a period of limitation upon the collection of taxes was forcefully stated by the Supreme Court in *Rothensies* v. *Electric Storage Battery Co.*, 329 U. S. 296, as follows:

> It would probably be all but intolerable, at least Congress has regarded it as ill-advised, to have an income tax system under which there never would come a day of final settlement and which required both the taxpayer and the Government to stand ready forever and a day to produce vouchers, prove events, establish values, and recall details of all that goes into an income tax contest. Hence the statute of limitation is an almost indispensable element of fairness as well as of practical administration of an income tax policy.
>
> \* \* \* \* \* \* \*
>
> If there are to be exceptions to the statute of limitations, it is for Congress rather than for the courts to create and limit them.

We are of the opinion that section 131 (c), which was held in *Pacific Metals* to except certain tax disputes arising from the particular manner of filing returns under that section from the operation of the general limitation provisions of the code, should not be given a broad

construction, and that the rule of the *Pacific Metals* case should not be extended beyond the requirements called for by section 131 (c) and the circumstances specifically referred to by us in our opinion in that case. See 3 Sutherland, Statutory Construction (3d Ed.) ¶ 7103.

In this case, unlike the *Pacific Metals* case, the deficiency does not result from something peculiarly encompassed within section 131 (c), and, therefore, removed from the general limitation provisions of section 275. There is no contention that the notice given by the taxpayer to the Commissioner in Form 1118 was inadequate or incomplete, or even factually inaccurate.

All of the information peculiarly within the knowledge of petitioner was correctly recited. Respondent's only complaint is that an erroneous rate of exchange was used in the notice. He states that the duty is imposed upon a taxpayer to give correct information as to the amount of taxes paid. It is unquestioned that petitioner gave such correct information in terms of the foreign currency, as required by respondent. See Form 1118. Neither the statute, nor respondent's regulations, nor Form 1118 specifies what rate of exchange shall be used. The form itself recites that conversion is to be made "at an exchange rate," and requires the taxpayer to "attach a statement describing in reasonable detail why and how this particular rate was determined." There is apparent recognition that the rate to be used is not a fixed, definite, positively determinable fact, upon which there can be no difference of opinion. The proper rate of exchange is not something that is peculiarly within the knowledge of a taxpayer. What rate of exchange is to be utilized is a matter of judgment upon which the discretion of both petitioner and respondent may be brought to bear. Moreover, it is not at all certain that respondent would accept in all cases even the published rates of exchange.[8] It would be an unwarranted extension of section 131 (c) to conclude that a rate of exchange must be used by a taxpayer in computations called for by Form 1118 at his peril, and that a mistake made in computations converting a correctly stated foreign tax paid into terms of American dollars thereby forever removes his action from the protection of a statute of limitations.

This deficiency, we have said, does not arise out of matters specifically covered by section 131 (c). The problems to which that section is addressed are ones the answers to which might not be available

---

[8] See footnote 5.
"The rates of exchange certified by the Federal Reserve Bank of New York for customs purposes, or adopted by any other agency are not to be considered as definitely reflecting the rates which will be accepted by the Bureau of Internal Revenue for Federal income and excess profits tax purposes." I. T. 3568, C. B. 1942–2, p. 112 ; cf. *Morris Marks Landau*, 7 T. C. 12, 15–16.

within the limitation period generally prescribed in the revenue act, or ones where the taxpayer in exclusive possession of information fails to comply with a specific statutory mandate calling for the communication of that information to respondent. Justification can thus be found for removing them from the bar of the limitation provisions.[9] The problem herein arose, not as a result of an inadequacy, unavailability, or even inaccuracy of facts, or a noncompliance with the law and regulations, but rather as a result of an error of judgment and calculation, that can be made under many other provisions of the revenue statutes. The statute of limitations protects against the exhuming of such errors long buried. Cf. *Rothensies* v. *Electric Storage Battery Co.*, *supra*. That such errors as here occurred would be made even by respondent was recognized and a time within which they could be corrected was specified.[10] Since the prescribed time for recovering an erroneous refund has run, respondent is seeking to squeeze this case within the confines of section 131 (c). This, we believe, he can not do, for, in our opinion, this proceeding does not present a problem of the type that falls specifically under that section.

A mutual misinterpretation of the statute can not amount to estoppel, see *American Light & Traction Co.*, 42 B. T. A. 1121; affd., 125 Fed. (2d) 365, and respondent has not pleaded this issue.

Reviewed by the Court.

*Decision will be entered for the petitioner.*

---

[9] Cf. G. C. M. 18801 ; C. B. 1937–2, pp. 302, 304 :

"* * * Congress seems intentionally not to have placed any limitation on an assessment of additional tax found due upon a refund of foreign taxes for very practical reasons. No one could foresee or tell when such refund would be made. Due to negotiations with respect to the true tax liability or to other causes, such refunds might not be made for several years, or in any event not until after the period of limitation for assessment of domestic taxes had expired. This is exactly what happened in the instant case. The foreign tax refund was made after the period of limitation prescribed by section 275 (a) (if applicable to section 131 (c) cases) had expired. Obviously, no assessment could have been made prior to the running of the 2-year limitation period because no basis (the refund) existed for an assessment until long after its running. Congress could never have intended the bar to apply to such cases. Otherwise, taxes admittedly due, and which would have been assessed at once except for the credit for foreign taxes, would never be collected notwithstanding the foreign taxes were refunded. Apparently, it was for the express purpose of avoiding such a result that Congress omitted any reference to section 275 (a) in section 131 (c)."

[10] SEC. 3746. SUITS FOR RECOVERY OF ERRONEOUS REFUNDS.

* * * * * * *

(b) REFUNDS OTHERWISE ERRONEOUS.—Any portion of an internal revenue tax (or any interest, penalty, additional amount, or addition to such tax) which has been erroneously refunded (if such refund would not be considered as erroneous under section 3774) may be recovered by suit brought in the name of the United States, but only if such suit is begun before the expiration of two years after the making of such refund.

[See *United States* v. *Wurts*, 303 U. S. 414.]