THOMAS J. BRANT, PETITIONER, ET AL.,* *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 12877, 12879, 12880, 12881. Promulgated November 9, 1949.

*John T. Riley*, Esq., and *Richard K. Yeamans*, Esq., for the petitioners.

*Robert H. Kinderman*, Esq., for the respondent.

*Proceedings of the following petitioners are consolidated herewith: Robert A. Brant; David O. Brant; and Elizabeth Brant King.

**OPINION.**

ARNOLD, *Judge*: In 1943 each petitioner received $27,941.49. Their contention is that, in order to meet their liability as guarantors of certain obligations, they withdrew specific property from a trust of which they were beneficiaries with a right to direct the use of the trust assets, mortgaged the property to their coguarantors, and later caused it to be transferred to the mortgagee, stipulating for a right to share in any recovery that might be effected, and that in 1943 they received, pursuant to this stipulation, a partial recovery amounting to less than the value of the property transferred, which recovery constitutes a return of capital.

Respondent contends that the property involved was an asset of the trust, the right of recovery contracted for became the property of

the trust, and this right passed to the petitioners upon liquidation of the trust in 1938; that the right was, in fact, worthless at that time and no part of the basis of the trust assets was, or could be, allotted to it in the distribution; and that its basis to the petitioners was zero, and, hence, the entire amount recovered in 1943 by virtue of the right is taxable income.

Consideration of the legal effects of the series of transactions here involved leads us to the conclusion that the petitioners' interpretation is correct.

The petitioners inherited from their father certain property which, in 1926, they placed in a trust identified as Trust No. P–7021. Among the assets was an interest in the California-Mexico Land & Cattle Co., which owned interests in two Mexican corporations, which in turn owned agricultural lands in Mexico. At the request of Chandler, one of the individuals interested in the Mexican lands, David O. Brant was designated in 1925 by his brothers and sisters to act for them in matters relating to those lands. He testified that he had various meetings with Chandler and visited the Mexican lands many times; that to finance crops on those lands the Mexican corporations borrowed money from the California banks, which required the interested individuals to guarantee the loans; that in endorsing and guaranteeing the notes of these corporations he acted for, and with the consent of, his brothers and sisters, as well as on his own account; and that each of the six had an equal share in the venture. It is clear that in giving these endorsements and guaranties, David O. Brant was acting for the six. They accepted the liability, as is shown by their acts in authorizing the mortgaging and transfer of the Brant Rancho, and when David received funds upon the recovery in 1943 he divided them equally among the brothers and sisters and estates of those deceased. He was not acting, and collectively they were not acting, for the trust. The Brants had substantially all their property in the trust and if they were called upon to meet this or any other large liability, recourse to trust assets would be necessary. The trustee, however, was not bound by the guaranties or endorsements and the debt which arose as a consequence thereof was not the debt of the trust. David did not represent himself as agent of the trust in signing the guaranties or endorsing the notes. There is no evidence that he was authorized so to act. The first guaranty was given prior to the creation of Trust P–7021. It is clear, therefore, that the liabilities created by the endorsements and guaranties were those of the six individuals and not of the trust or the trustee. Respondent does not contend otherwise.

In 1932 the banks demanded payment of the loans. The Chandis Securities Co. and the M. H. Sherman Co., holding interests of some

of the guarantors, paid the banks, took over the notes and guaranty contracts, and called upon the other guarantors to pay their pro rata shares. David negotiated with the representatives of these companies and they agreed to accept a mortgage on the Brant Rancho in satisfaction of the liability of the Brants. He discussed the matter with the other members of the family who agreed to this. The Brants then instructed the trustee to convey this land to David O. Brant, without consideration, in order to permit him to place a mortgage on it and the trustee complied. David executed a mortgage to the Chandis Securities Co. and the M. H. Sherman Co. The mortgage was also executed by the mortgagees and contains the terms and conditions of the agreement between the parties. It described the circumstances giving rise to the debt and stipulated that David's endorsements and guaranties were canceled and the mortgagees accepted the mortgage by way of novation. The mortgage was also to cover future advances by the mortgagees, under stated conditions, for maintenance of the Mexican lands. It provided that in certain contingencies, including expropriation of the Mexican lands, the mortgagees should have recourse against the mortgaged property and that if foreclosure was had and the mortgagees later effected a recovery on the indebtedness of the Mexican corporations, one-fifth should be paid to the mortgagor. At that time the persons interested in the Mexican lands were hopeful that future operations in Mexico would be profitable and enable them to recover the amounts advanced. If this occurred the Rancho would not be lost to the Brants.

The Brants thus secured their individual and private obligation by placing an encumbrance on what had been a trust asset. They had power to use this trust property for their private purpose, for, under the terms of the trust instrument, they could direct the trustee relative to the administration of the trust. It is shown that the trustee invariably followed the directions of the advisory committee, which were given in the form of letters signed by at least four of the six. They dealt with the trust property as their own.

In securing this debt of the Brants, David stipulated for a right to share pro rata in any recovery following a foreclosure. He held this right as representative of the six. After the mortgage agreement was executed, David, by quitclaim deed, transferred the Brant Rancho back to the trustee, subject to the mortgage. Although the mortgage itself provided that every stipulation should inure to the benefit of the parties and their respective successors in interest, the trustee or trust was not the successor in interest of David O. Brant, in so far as the right to share in a recovery is concerned. Any recovery accruing to the Brants would be upon a personal liability they had discharged, the debt being that of the individuals, and not of the trust. The stipulation entitling the mortgagor to share in any recovery was per-

sonal and did not pass to the trustee by virtue of the quitclaim deed to the trustee. The purpose of that deed was to restore to the trustee the title to the Brant Rancho, subject to the lien of the mortgage. The right to share in the recovery never became property of the trust.

In 1938 the Mexican Government expropriated most of the productive lands of the Colorado River Land Co., S. A. This terminated any possibility of profitable operation of those lands and the Chandler-Sherman Corporation, successor in interest of the mortgagees, filed suit and obtained a judgment against the Mexican corporation in the California courts. David O. Brant negotiated with the judgment creditor, which agreed to accept conveyance of 750 acres of the Brant Rancho in satisfaction of the Brants' liability under their guaranty. David's brothers and sisters agreed to this and the six directed the trustee to convey the 750 acres to the Chandler-Sherman Corporation, without consideration, as that would be consummated outside of the trust. The trustee conveyed as directed. By virtue of this transfer in settlement of their obligation, the Brants became subrogated to a one-fifth interest in the judgment held by the Chandler-Sherman Corporation against the Colorado River Land Co., S. A. This was their private property and not property of the trust.

In September 1938 one of the six died and the remaining beneficiaries thereafter elected to terminate the trust in a liquidation in accordance with section 112 (b) (7) of the Revenue Act of 1938. The distribution was made in December 1938.

Since the guaranties were private obligations of the beneficiaries and not of the trust, the right contracted for in the mortgage to share in a recovery was likewise a private right and not property of the trust, and the interest in the judgment to which the Brants were subrogated upon the settlement of the private obligation was also property of the individual beneficiaries and not of the trust. It follows that the interest in the judgment was not among the assets of the trust distributed to the beneficiaries upon its dissolution. Consequently, sections 112 (b) (7) and 113 (a) (18) of the Revenue Act of 1938, relating to certain distributions in liquidation by a corporation and which respondent deems controlling, have no application.

The basis to the petitioners of the interest in the judgment to which they had become subrogated is to be measured by the fair market value of the property they caused to be transferred to pay their obligation. The transfer of part of the Brant Rancho was equivalent to a distribution by a corporation (the trust) to its stockholders (the beneficiaries) of specific assets, and the transfer of these assets by the stockholders in payment of their private debt. The fact that the trustee, at the direction of the beneficiaries, made a direct transfer is not determinative. See *Security First National Bank of Los Angeles, Executor*, 28 B. T. A. 289, pp. 310–311. The Brants acquired

from the trust, and to discharge their obligation under the guaranty parted with, property of a value in excess of $167,648.92. As to the value, the Chandler-Sherman Corporation accepted the transfer of 750 acres in satisfaction of its claim for approximately $780,000, and a witness, expert in real estate valuations, placed a value of $510,463.95 on the part transferred. For the purpose of this case it is not necessary to find the value if it was in excess of the amount recovered by the Brants in 1943, as clearly it was. In 1943, when they recovered part of the amount owed them by the land company, they received a return of capital and not ordinary income.

Respondent argues that the petitioners' contention is at variance with the manner in which the transaction was reported in various returns of the trustee and the estates of the deceased beneficiaries. The manner in which other taxpayers may have reported the transaction is not determinative of the issue here. Respondent also argues that the petitioners' contention is not consistent with their returns for 1938, as they did not then treat the receipt of part of the Brant Rancho as separate from the distribution of the remaining trust assets. Under the facts before us, the manner in which the petitioners treated the transaction in their 1938 returns is not conclusive upon them. See *Richard K. Mellon*, 12 T. C. 90 (on appeal CA-3) ; *Texas Co. (Caribbean) Ltd.*, 12 T. C. 925.

Respondent contends further that the amount received by each petitioner constitutes interest and is therefore taxable income, pointing out that a large part of the judgment was for interest and that interest also accrued upon the judgment, so that the part of the claim which was for interest exceeded the amount recovered in 1943. Respondent states that under California Civil Code, section 1479, prescribing rules for the application of payments on debts, where no intention as to application is manifested by the debtor and the creditor makes no application within a reasonable time, payments must be applied to the extinguishment of interest before any is applied upon principal. As respondent points out, the reason for the statutory rule is that, in the absence of a designation by the debtor, the creditor is entitled to preserve as a debt, until all past due interest is paid, that portion of the debt which will continue to draw interest.

Although the amount paid to the banks was in part interest and the judgment obtained by the Chandler-Sherman Corporation was for interest as well as principal, the payment to that corporation by the Brants of their liability as coguarantors was, as between these parties, a payment solely of principal. Notwithstanding that some part of the award made in 1943 to the American stockholders was designated as interest, the proceeds which ultimately were received by the Brants as judgment creditors were received in restitution of that payment of principal, and not as interest.

In *Commissioner* v. *Speyer*, 77 Fed. (2d) 824, and *Commissioner* v. *Ullmann*, 77 Fed. (2d) 827 (certiorari denied, 296 U. S. 631, in both cases) the Circuit Court of Appeals for the Second Circuit, in affirming the Board of Tax Appeals, held that no taxable income was received by certain taxpayers as the result of awards on account of war claims against the German Government until the taxpayers had received a return of their capital losses. In view of such decisions, the General Counsel for the Department of the Treasury took the position that no taxable income is derived from awards by the Mixed Claims Commission, United States and Germany, under the Settlement of War Claims Act of 1926 until there has been a recovery by the taxpayers of their capital bases. G. C. M. 16166, C. B. XV–1 (1936), p. 175. In *Drier* v. *Helvering*, 72 Fed. (2d) 76, the Court of Appeals for the District of Columbia held to the same effect, pointing out that, although a part of the award was designated as interest, the total received by the taxpayer did not exceed the cost basis to the taxpayer of the property seized by the German Government.

The same principle applies here. Whether petitioners will ever recover their capital basis is not now ascertainable. The Mexican Government agreed to make certain payments. Whether all will be paid as agreed or the amount ultimately paid to stockholders of the land company will be sufficient to pay the judgment in full can not now be known. Under these circumstances the petitioners have not received interest. The provisions of the California statute referred to by the respondent, under the circumstances here, are not applicable.

*Decisions will be entered for the petitioners.*