OPINION. Hill, Judge: The first issue concerns the question of basis (unadjusted) to be employed in the determination of gain or loss resulting from the petitioner’s sale of a parcel of real property located in Natick, Massachusetts, during the taxable year 1944. Petitioner maintains that she purchased this property for rental purposes so that its proper basis (unadjusted) is its cost. We believe the evidence presented does not support petitioner’s position. On the contrary, it indicates that the property was acquired as a personal residence. The facts surrounding the purchase of the property may best be summed up by several statements made by the petitioner when she was testifying at the hearing of this case. At one time she stated: “As I told you, my brother was not well and I being the oldest of the family, they thought I should be the one to buy the house and look after him. He had to live out of town and I used to go to see him every week.” Another time she stated: “The property was bought and put in my name so that I could look after my brother.” She also testified that the sum she paid for the house, $22,000, was given to her by her father. From the date it was purchased until the date of his death in December 1929, the petitioner’s brother occupied this property as his residence, rent free. We believe the evidence indicates that the purchase of the property in question was a family affair, that the main purpose for its purchase was to provide a member of the family with a residence outside the city and that ownership of the property was acquired in the name of the petitioner in order to effectuate this purpose. The property was purchased as a personal family residence and not as rental property. Petitioner argues in the alternative, however, that even if the property was originally purchased for residential property it was converted to rental property upon the death of her brother. We believe that the property was in fact converted to rental property. After petitioner’s brother died it was never occupied by the petitioner or any of her family. It was held out for rental and after a short time was rented and at all times thereafter it was rented or held out for rental until it was sold in the taxable year 1944. Wherever any such conversion of property purchased by the taxpayer takes place, the proper basis (unadjusted) is cost or market value on the date of conversion, whichever is the lesser,[1] and the burden of proving basis is on the taxpayer. H. W. Wahlert, 17 T. C. 655. While petitioner introduced evidence that the property was in good condition when it was converted, no evidence was introduced as to its market value. Accordingly, for failure of proof in this respect, we hold that petitioner has not established that the respondent erred in reducing the basis of this property. The second issue concerns petitioner’s right to a deduction in the year 1944 for an alleged loss resulting from a transaction entered into for profit. The facts with respect to this issue are somewhat involved. The transaction concerns a piece of property which had been owned by petitioner’s mother and consisted of a large summer home on Long Island known as Belle Terre.' In her last will and testament petitioner’s mother provided that title in this property was to pass to her executrix, the petitioner, who was to sell the property and distribute the proceeds equally to herself, as an individual, and her two sisters. The will also provided (1) that until such time as the property was sold petitioner was entitled to use it as a summer residence, and (2) that the estate should have some discretion with respect to the time and manner of selling the property so that the beneficiaries should not have to suffer the rigors of a forced sale. The petitioner, as executrix, did not sell the property and distribute the proceeds as the will directed. Instead the three sisters in December 1938 renounced their right, title, and interest to the specific bequest of the proceeds of the sale of the property. The property then fell into the residuary estate.[2] However, the will provided that the residue of the estate was to be divided into three parts; four-tenths to constitute the corpus of a trust of which petitioner was to be the income beneficiary for life with power of appointment and the remaining six-tenths of the residue of the estate to be divided equally as the corpora of the two trusts of which the other two sisters were the beneficiaries. Accordingly, by virtue of tbeir renunciation, the three sisters’ interests in the property were not surrendered but rather converted. Several months after they had renounced their interests in the above-mentioned legacy the three sisters, on February 25,1939, entered into what was termed a “memorandum agreement” between the three sisters individually on the one hand and the petitioner, as executrix, on the other hand. This instrument contained several material provisions. The three sisters offered to purchase from the estate either “the proceeds of the sale of the Belle Terre property” or the property itself for a consideration of $48,000. This offer was to remain open for a period of at least 3 years and was to continue thereafter until the termination by any of the parties upon 30-days’ notice. During the period it was to remain open petitioner, as executrix, was free to accept or reject this offer. The three sisters also undertook to relieve the estate of the obligation to maintain the property during such period. The parties permitted this offer to remain open until November 22, 1944, when it was terminated. During the period it remained open considerable expenses were incurred in maintaining the property. The petitioner paid these expenses out of the estate funds and she then deducted such amounts from the yearly income to which the three sisters were otherwise entitled under the provisions of the will so that they, in fact, bore the burden of such expenses. It is the petitioner’s position that she has suffered a loss in the year 1944 on a transaction entered into for profit and that the loss is deductible under section 23 (e) of the Internal Kevenue Code.[3] She maintains that she was a party to a type of “option agreement” to purchase the property and that since this option was not taken up but was terminated in 1944 her share of the maintenance expenses incurred in the interim, the period 1939-1944, constituted a loss incurred during the taxable year 1944. Prior to the renunciation under the provisions of paragraph Sixth of the will petitioner was entitled to one-third of the amount realizable on the sale of the Belle Terre property. After the renunciation petitioner was entitled to such additional income from the testamentary trust as would be realized by the increase of the corpus of the trust by four-tenths of the amount realizable on the sale of this property. At the close of the taxable year 1944 petitioner still held this same interest, the value of which may have increased, decreased, or remained the same depending upon what would then be realized on the sale of the property. We can find no loss here. Petitioner, however, would have us look only at her option agreement and maintains that the only transaction involved was an option to purchase property and that the transaction became a closed one when the option was terminated in 1944. We believe her position in this respect is unrealistic. This was not an arm’s length transaction where one party bound himself by an option to purchase the property of another party. On the contrary, we view the option as part of a special arrangement between the trustee and the beneficiaries with respect to property in which the beneficiaries already held interests. Viewing the entire transaction, we have been unable to find that a loss was in fact incurred. Furthermore, we are not convinced that the parties themselves gave full effect to the two written instruments. The property has never been sold. There is no indication in the record that any attempt was ever made to sell the property or that any attempt was ever made to rent it. On the contrary, petitioner has continued to use it as a personal summer residence and so used it up to and including the summer of 1950. It appears that she has, in fact, appropriated this property to her personal use. Expenses with respect to property so appropriated are personal expenses which are not deductible. In conclusion we hold that respondent did not err in denying petitioner’s claimed loss on the transaction in respect to the Belle Terre property. The third issue presented concerns the question of whether petitioner realized taxable income by virtue of the receipt in 1944 of the sum of $600 as her share of $1,500 interest, which had accrued prior to the death of petitioner’s mother, on certain bonds. Since decedent died in 1937 and since the interest in question on the bonds had accrued prior to her death, such interest was properly in-cludible in her final return in accordance with section 42, Internal Revenue Code, (prior to amendment by the 1942 Revenue Act) which reads as follows: Sec. 42. PERIOD IN WHICH ITEMS OP GROSS INCOME INCLUDED. (a) General Rule. — The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. In the case of the death of a taxpayer there shall be included in computing net income for the taxable period in which falls the date of his death, amounts accrued up to the date of his death if not otherwise properly includible in respect of such period or a prior period. That the estate failed to include this income in the decedent’s final return is not a proper basis for the determination that any part of such interest is income to the beneficiary when received. Cf. Thomas J. Brant, 13 T. C. 712, 722. No question is presented as to transferee liability. We hold that the amount of $600 received as petitioner’s share of such interest in 1944 does not constitute taxable income. Decision will entered under Rule 50. Regulations hi. Sec. 29.23 (e)-l. Losses by Individuals.— * * * A loss on the sale of residential property purchased or constructed by the taxpayer for use as his personal residence and so used by him up to the time of the sale is not deductible. If, however, property so purchased or constructed is prior to its sale rented or otherwise appropriated to income-producing purposes and is used for such purposes up to the time of its sale, a loss from the sale of the property, computed as provided in section 111, is, subject to the limitations provided in section 117, an allowable deduction in an amount not to exceed the excess of the value of the property at the time it was appropriated to income-producing purposes (with proper adjustment for depreciation) over the amount realized from the sale. Cf. Heiner v. Tindle, 276 U. S. 582. See, Page on Wills, Lifetime Ed., vol. 4, sec. 1412 at p. 156. SEC. 23. deductions FROM GROSS INCOME. [[Image here]] (e) Losses by Individuals. — In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise— (1) if incurred in trade or business; or (2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or