## MORRIS MARKS LANDAU, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2318. Promulgated June 4, 1946.

*Raymond C. Sandler, Esq.*, and *Nathan Schwartz, Esq.*, for the petitioner.

*B. H. Neblett, Esq.*, for the respondent.

## OPINION.

ARNOLD, *Judge*: The parties are agreed that petitioner made a taxable gift; the dispute between them is over the amount of the gift. Section 1005 of the Internal Revenue Code provides that "If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift." The subject matter of the gift here was blocked South African pounds in South Africa. The petitioner valued the pounds at $2 per pound, due to the governmental restrictions placed on South African currency. The respondent valued the pounds at the official rate of exchange, $3.98 per free pound. The question that we must decide, while essentially one of fact, namely, the value of the gift subject to tax, is complicated by the legal question of whether value shall be determined at the residence of the donor or at the situs of the property transferred.

We have found as a fact that petitioner made a gift during the taxable year of $55,000. This finding is based largely upon the uncontradicted testimony that "blocked" South African pounds in the United States had a fair market value in December 1941 of $1.75 to $2.25 per pound, and $2 per pound; that such pounds had no collateral value whatever; that the official rate of exchange applied to "free" pounds as distinguished from blocked pounds; that it was practically impossible to free any South African pounds from exchange control restrictions; and that the value fixed for these South African pounds must take into consideration the fact that they can not be transferred from the Union of South Africa.

Respondent contends that, since the beneficiaries resided in England and South Africa, there is no occasion to transfer the pounds to the United States or to fix a value based upon the restricted market existing in this country. He insists that the donor derived and the donees received complete economic satisfaction from the gift, which should be measured at the official rate of exchange. Respondent cites and relies upon I. T. 3568, C. B. 1942–2, page 112,[1] as being a controlling

---

[1] Advice is requested whether the foreign exchange rates as of December 31, 1941, certified by the Federal Reserve Bank of New York for customs purposes, will be accepted by the Bureau of Internal Revenue for Federal income and excess profits tax purposes.

Notwithstanding present conditions of disturbance and the control of trading and exchange by foreign countries, free or open market rates lower than either official or controlled rates were in certain cases realizable on December 31, 1941, dependent upon the regulations of the particular foreign country and the degree of control which was exercised. In any case in which conversion rates as of that date are to be used, such rates shall be those giving a result most clearly reflecting the proper amounts of the items to which they relate as affected by the conditions and available means and rates of conversion as of that date. The rates of exchange used will be subject to verification and check upon the examination of the taxpayer's books and records by internal revenue agents.

In view of the foregoing, the rates of exchange as of December 31, 1941, certified by the Federal Reserve Bank of New York for customs purposes, or adopted by any other agency, are not to be considered as definitely reflecting the rates which will be accepted by the Bureau of Internal Revenue for Federal income and excess profits tax purposes.

force. We can find no support for respondent in this ruling. On the contrary, we understand it to mean that, despite disturbed conditions and the control of trading and exchange by foreign countries, conversion rates lower than the official or controlled rates were in some cases available on December 31, 1941, and that the rates of exchange as of that date, certified by the Federal Reserve Bank of New York for customs purposes, are not to be considered as definitely reflecting the rates acceptable for Federal income and excess profits tax purposes.

Neither party has directed our attention to a gift tax case involving foreign currency. Petitioner relies upon two income tax cases, *International Mortgage & Investment Corporation*, 36 B. T. A. 187, and *Eder* v. *Commissioner*, 138 Fed. (2d) 27, modifying 47 B. T. A. 235, which involved blocked foreign currencies. In the *International* case we held that no gain was realized on blocked German marks, but that gain was realized on German marks which were unrestricted at the time of receipt, but were later blocked by law before their removal from Germany.

In the *Eder* case the taxpayers were shareholders in a foreign personal holding company organized under the laws of Colombia. The laws of that country prohibited the transfer of pesos outside the country in excess of 1,000 pesos per month. The Circuit Court remanded the case to this Court to determine the fair market value of the blocked pesos in terms of American dollars, holding that this Court and the Commissioner had committed error in valuing the pesos at the exchange rate applicable to free pesos. Thus it is apparent that the Circuit Court did not consider the current rates of exchange acceptable conversion rates for valuing blocked pesos, and on remand this Court fixed the value on a basis of blocked pesos. *Credit & Investment Corporation*, 47 B. T. A. 673, is to the same effect with respect to blocked German marks.

It seems clear from the gift tax regulations, Regulations 108, section 86.18, that intangible personal property situated abroad, "constitutes property within the United States if consisting of a property right issuing from or enforceable against a resident of the United States * * *." Cf. *Burnet* v. *Brooks*, 288 U. S. 378. The right to transfer and to give possession of the South African pounds to another or others was a property right issuing from a resident of the United States. Both parties have treated the value of this property as equivalent to the value of the 27,500 pounds. South African pounds were subject to control restrictions imposed upon South African currency by the Union of South Africa. These exchange restrictions reduced the value of petitioner's property right. Neither he nor the trustee could remove the pounds from South Africa. Under such circumstances we think the value of the property should be determined by taking into account the governmental restrictions.

In addition to his own testimony, petitioner offered the testimony of the manager of the international banking department of the Bank of America. This witness had dealt continuously in foreign exchange and foreign currency since about 1923. He had had four years of banking experience in Germany, two and one-half years in Holland, five years in New York, and thirteen years with the Bank of America. He was familiar with the restrictions and regulations issued by the Union of South Africa and the United Kingdom with respect to the exchange, withdrawal, and use of currency. He stated unqualifiedly that the governmental restrictions imposed by the Union of South Africa affected the value of South African pounds in the United States, and expressed the opinion that the value thereof was anywhere between $1.75 and $2.25 per pound. He testified that the Bank of America bought and sold them at that price and, when pressed on cross-examination as to whether the value in December 1941 was $2.25 or $1.75, he fixed the value at $2 per pound. The witness testified to the extreme difficulty of securing a permit from London or South Africa to free the pounds of either for use and, in the light of his own experience, he stated that it would have been impossible for this petitioner to have secured any exemption under the Emergency Finance Regulations in order to bring South African pounds to the United States for investment purposes. In view of this testimony and all the other facts and circumstances of record, we are of the opinion that the value of petitioner's gift was $55,000, and a finding to that effect has been made.

Petitioner's claim that he overpaid his gift tax liability for 1941 is unsupported by the record.

Reviewed by the Court.

*Decision will be entered for the petitioner.*