*Decision will be entered under Rule 50.*

ZAREH NUBAR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9948.  Promulgated October 18, 1949.

*Henry Mannix, Esq.*, and *Charles K. Rice, Esq.*, for the petitioner.
*William F. Evans, Esq.*, for the respondent.

**574**

OPINION.

HARRON, *Judge*: The questions for decision are (1) whether or not petitioner was a resident alien during the periods in question, and (2) whether or not he was engaged in a trade or business in the United States during the periods in question, so as to be taxable on capital gains and on income from sources outside the United States.

Petitioner contends that he was a nonresident alien within the meaning of section 211 (a) of the Internal Revenue Code,[1] that he

[1] SEC. 211. TAX ON NONRESIDENT ALIEN INDIVIDUALS [as amended by Revenue Act of 1942].
  (a) No UNITED STATES BUSINESS OR OFFICE.—
  (1) GENERAL RULE.—
  (A) Imposition of Tax.—There shall be levied, collected, and paid for each taxable year, in lieu of the tax imposed by sections 11 and 12, upon the amount received, by every non-resident alien individual not engaged in trade or business within the United States, from sources within the United States as interest (except interest on deposits with persons carrying on the banking business), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income, a tax of 30 per centum of such amount, except that such rate shall be reduced, in the case of a resident of any country in North, Central, or South America, or in the West Indies, or of Newfoundland, to such rate (not less than 5 per centum) as may be provided by treaty with such country.

was not engaged in any business in the United States during the taxable years 1941 through 1944 inclusive, and that, therefore, he is not taxable on the capital gains which he realized from the transactions which were carried on in the United States in the security and commodity futures markets through brokerage accounts.

The respondent has determined that the petitioner was a resident alien during the taxable years and, therefore, that he is taxable on all his net income including capital gains from all sources. Respondent also contends that the petitioner was engaged in a trade or business in the United States and is, therefore, taxable on all his income from sources within the United States.

Whether or not a person is a "resident" of a country is a question to be determined by all of the facts and circumstances present in each individual case. See *J. P. Schumacher*, 32 B. T. A. 1242. The intention of an individual is a highly important factor. See Beale, Conflict of Laws, vol. 1, p. 109, sec. 10.3, where the following is stated:

\* \* \* The difference between three conceptions, that of sojourn, residence, and domicil (not now including domicil by operation of law) is one purely of intention. To become a sojourner, no intention whatever is necessary, merely the fact of personal existence in the place. For residence there is an intention to live in the place for the time being. For the establishment of domicil the intention must be not merely to live in the place but to make a home there. \* \* \* A residence may continue to exist in spite of a temporary absence from it, although the absence may be long continued. A mere temporary sojourn in the state cannot be taken to be residence. If a man is sojourning in a place, he becomes a resident thereof at the moment of his intending to become a resident, in the same way that a resident becomes domiciled at the moment of forming an intention to fix a home in the place. \* \* \*

The meaning of the term "residence" in statutes has been the subject of much interpretation. With respect to its meaning in revenue laws, the following observation is made by Beale, *supra*, p. 111, sec. 10.4, quoting from *Barhydt* v. *Cross*, 136 N. W. 525:

\* \* \* This consideration requires that a man should have a residence somewhere, but that he should have one residence only since otherwise he would bear a double burden. "Courts endeavor to construe revenue laws so that each one will share his just burden of taxation; and he should pay his taxes somewhere. Hence it is the universal rule, in construing revenue statutes, that, as a man must have a domicile or taxing residence somewhere, his old residence will be deemed his present one until a new one is acquired. If this were not the rule, a man might escape taxation altogether." It is therefore very generally agreed that the words "resident" or "inhabitant," in statutes referring to taxation, are synonymous with the legal term "domiciled"; and that a man must pay his taxes as a "resident" at his place of domicil \* \* \*.

The pertinent provisions of the statute, sections 211 (a) and (b), refer to "*nonresident*" aliens, but the term "nonresident" in the above statutory provisions has been construed to apply to those who are

physically present in the United States as well as to those who are not. See *Florica Constantinescu*, 11 T. C. 37, 42, where we said:

* * * Of course, during all of the time in question she was physically present in the United States, but mere physical presence in a foreign country, even though it is considerably prolonged, is not of itself sufficient to establish residence. Cf. *Michael Downs*, 7 T. C. 1053; affd., 166 Fed. (2d) 504; certiorari denied, 334 U. S. 832; *Arthur J. H. Johnson*, 7 T. C. 1040.

Upon consideration of all of the evidence in this proceeding and careful scrutiny of all of the facts and circumstances, it has been found as a fact that the petitioner was a nonresident alien during the taxable years in question, 1941 through 1944.

The petitioner's testimony and that of his witnesses are that the petitioner's intention in coming to the United States was to see the New York World's Fair, to speak with Dr. Einstein, and to travel, first in the United States and then in Central and South America. There is considerable evidence in this proceeding which corroborates the petitioner's testimony that his intent was to be a sojourner, or visitor, in the United States rather than a resident. For example, the petitioner came to the United States with no other possessions than the minimum amount of clothing ("he traveled light"), and his living arrangements in a hotel were that of a transient. His family was in Europe, all of his household goods were there in a residence which he maintained and intended to maintain during his entire absence, and all of his personal possessions were in Europe. He had a home in Switzerland, to which he could return. He expressed the intention to various officials, friends, and immigration authorities that he desired to return to Europe to his family as soon as it was possible to do so. The petitioner carried out his intentions with respect to his visit to the United States, as set forth above. He traveled across the United States, visiting many places and endeavored to continue his journey into Mexico, but was unable to do so. War conditions frustrated his efforts to fully carry out his plans to travel in the western hemisphere. Almost all of the affirmative acts of the petitioner confirm his testimony that he did not intend to become a resident of the United States.

It is true that the petitioner remained in the United States after the expiration of extensions of his visitors' permit, and that he was arrested as a violator of the immigration laws on January 15, 1941. However, the fact that he was allowed to remain in the United States from the time of his arrest on January 15, 1941, until the date of his voluntary departure on August 15, 1945, by the immigration officials shows that war time conditions made his return to either France or Switzerland or Egypt either impossible or hazardous. Otherwise, since he was in the custody of the immigration officials, released upon his bond only, they would have executed their duties by either forcible

deportation or by refusing to allow him to remain longer, and then to depart voluntarily. Under these circumstances, and upon consideration of the evidence, we are satisfied with the petitioner's testimony that he remained in the United States after January 15, 1941, because of the obstacles which war time conditions put in the way of his leaving this country and going to another one into which he could be admitted. Therefore, it has been found as a fact that the petitioner was a nonresident alien during the taxable years.

The above conclusion is based upon the particular facts of this proceeding, and it is not premised upon any presumption that the limitation of an alien's stay in the United States by the immigration laws is determinative of the alien's status as that of a nonresident. See *Florica Constantinescue, supra*, p. 41.

There remains to be decided the question of whether or not petitioner, even though he was a nonresident alien individual, was engaged in a trade or business within the United States because extensive speculative transactions in securities and commodity futures were effected by resident brokers for him. We think that section 211 (b) of the Internal Revenue Code, which is set forth in the margin,[2] clearly provides that transactions in the United States in commodities, or in stocks or securities of a kind customarily dealt in on an exchange, *if effected through a resident broker*, do not constitute carrying on a trade or business.

Before the Revenue Act of 1936 was enacted, profits realized by a nonresident alien trading on the security or commodity exchanges of the United States were taxable as income derived from sources within the United States. This was changed by section 211 of the Revenue Act of 1936, similar to the present section 211. House Report No. 2475, 74th Cong., 2d sess., to accompany the Revenue Bill of 1936, explains the change (pp. 9–10) :

A nonresident [alien] will not be subject to the tax on capital gains, including gains from hedging operations, as at present, it having been found impossible

---

[2] SEC. 211. TAX ON NONRESIDENT ALIEN INDIVIDUALS.

(b) UNITED STATES BUSINESS OR OFFICE.—A nonresident alien individual engaged in trade or business in the United States shall be taxable without regard to the provisions of subsection (a). As used in this section, section 119, section 143, section 144, and section 231, the phrase "engaged in trade or business within the United States" includes the performance of personal services within the United States at any time within the taxable year, but does not include the performance of personal services for a nonresident alien individual, foreign partnership, or foreign corporation, not engaged in trade or business within the United States, by a nonresident alien individual temporarily present in the United States for a period or periods not exceeding a total of ninety days during the taxable year and whose compensation for such services does not exceed in the aggregate $3,000. Such phrase does not include the effecting, through a resident broker, commission agent, or custodian, of transactions in the United States in commodities (if of a kind customarily dealt in on an organized commodity exchange, if the transaction is of the kind customarily consummated at such place, and if the alien, partnership, or corporation has no office or place of business in the United States at any time during the taxable year through which or by the direction of which such transactions in commodities are effected), or in stocks or securities.

to effectually collect this latter tax. It is believed that this exemption from tax will result in additional revenue from the transfer taxes and from the income tax in the case of persons carrying on the brokerage business. * * * It is believed that the proposed revision of our system of taxing nonresident aliens * * * will be productive of substantial amounts of additional revenue since it replaces a theoretical system impracticable of administration in a great number of cases

Nonresident aliens who are not engaged in trade or business within the United States are subject to a withholding tax at the source imposed upon their gross income from certain enumerated types of income derived from sources within the United States. Capital gains from the sale of securities or commodities on regulated commodity exchanges are not one of the enumerated sources in section 211 (a).

Section 211 (b), in defining the term "engaged in a trade or business within the United States," specifically exempts trading on the security or commodity exchanges through a resident broker, commission agent, or custodian. This is consistent with section 211 (a), which does not include gains from such transactions in the enumerated sources subject to the withholding tax. While Congress was concerned primarily with transactions effected by nonresident aliens from abroad through resident brokers, it did not so limit the exemption in section 211 (b), nor is there any reference to any such limitation in the committee reports. It is doubtful that Congress would have wanted to discourage travel in the United States by making any differentiation between nonresidents who visited the United States during the taxable year and those who did not. When section 211 was enacted in 1936, conditions under which a person could live in the United States for a considerable length of time and still be classified as a nonresident for tax purposes apparently were not envisaged.

Congress, however, did distinguish in section 211 (b) between those nonresident aliens "temporarily present in the United States for a period or periods not exceeding a total of ninety days during the taxable year and whose compensation for such service does not exceed in the aggregate $3,000," and those who were here for longer periods in defining "engaged in a trade or business within the United States." But no similar distinction was made between nonresident aliens effecting stock or commodity exchange transactions from abroad through a resident broker, commission agent, or custodian, and nonresident aliens physically present in the United States and effecting similar transactions.[3]

---

[3] An attempt was made in Congress in 1948 to narrow the exemption allowed by the last sentence of section 211 (b) by distinguishing between nonresident aliens physically present in the United States for 90 days or more and those who were not. In the Revenue Revision Act of 1948 which passed the House of Representatives, there is a provision which dealt with this loophole by imposing a 30 per cent tax on net capital gains derived from sources within the United States by nonresident aliens not engaged in trade or business in the United States but temporarily present here. This bill was never acted upon by the Senate and failed to become law.

Respondent invites our attention to the case of *Fernand C. A. Adda*, 10 T. C. 273; affd., 171 Fed. (2d) 457. In that case Adda, a nonresident alien who was not in the United States, had empowered his brother, who resided in the United States, to deal in commodity futures at his own discretion through resident brokers for Adda's account. We held that the petitioner in that proceeding was engaged in a trade or business within the United States and was taxable as a nonresident alien so engaged. Our decision was based on the fact that Adda had not complied with the letter of the statute, that he was effecting his transactions not through a resident broker, but through an agent who was resident in the United States. Analogy was made to section 219 of the Internal Revenue Code, which provides that a nonresident alien individual member of a partnership shall be considered as engaged in a trade or business within the United States if the partnership is so engaged, since each partner is the agent of each other partner within the scope of the partnership business.

The facts in the instant case are different. All transactions were carried on through a resident broker in conformity with the statute, and the petitioner in the instant proceeding made all decisions as to the purchase and sale of securities and commodities himself. In the *Adda* case we pointed out that the resident agent, Adda's brother, was using his own discretion in the operations which he conducted and that Adda was taking advantage of "decisions made in the United States by one who is not a resident broker, commission agent, or custodian." This fact was pointed out to show that Adda was engaging, through his agent, in business in the United States. If Adda had made all the decisions from abroad, with the agent a mere conduit to convey them to the broker, the facts would have presented a different question. Such question was not decided in the *Adda* case; but, without deciding such question here, it is apparent that a strong contention could be made that such transactions would come within the exemption of section 211 (b). See *Scottish American Investment Co.*, 12 T. C. 49.

It is clear by virtue of the specific provisions and legislative history of section 211 (b) that the activities of the petitioner, despite his physical presence in the United States, were not such as to constitute engaging in a trade or business in the United States within the intendment of section 211 (b) of the Internal Revenue Code.

It is held that the respondent erred in including in the petitioner's income for the taxable years income from sources outside the United States; and that he erred in including in the income derived from sources within the United States the capital gains realized from the sales of capital assets.

*Decision will be entered under Rule 50.*