CESKA COOPER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20156. Promulgated November 30, 1950.

*George R. Sherriff, Esq.,* and *George H. Reges, Esq.,* for the petitioner.

*Sheldon V. Ekman, Esq.,* for the respondent.

OPINION.

BLACK, *Judge:* The questions which we have for decision in this proceeding are as follows:

1. Was the petitioner a resident of the United States during 1942, 1943, and 1944?

2. Is petitioner taxable upon dividends and salary unconditionally credited to her account in England in British pounds which she did not receive in the United States during the taxable years because of British Exchange Control Regulations?

3. If question No. 2 is answered in the affirmative, then should her taxable income be measured by the official exchange rate of the British pound or should it be measured by the value of the blocked British pound in the free market of the United States during such period?

We shall first take up and decide the issue raised by question 1. Petitioner strongly urges that she at no time during the taxable years was a resident of the United States and that, therefore, she should be taxed as a nonresident alien. If this should be true then petitioner would not be taxable upon the salaries and dividends which were credited to her account in England nor would she be taxable on the capital gains which she had in the United States during the taxable years as a result of her trading in stocks and bonds through a broker. See *Zareh Nubar*, 13 T. C. 566.

Respondent contends that during the period covered by his deficiency notice petitioner was a resident of the United States and, being a resident of the United States, her income is taxable in all respects the same as if she had been a resident citizen of the United States. See Regulations 111, section 29.211-1.

Whether petitioner was a resident of the United States during the period in question is largely a question of fact to be determined from her intent. Treasury regulations applicable to the question we have

here to decide are printed in the margin.[1] The Treasury regulations printed in the margin have often been cited with approval by our Court and other courts. We think that when we apply these regulations to the facts which we have present in the instant case, we must hold that during the years 1942, 1943, and 1944, petitioner was a resident of the United States. Petitioner earnestly argues that unless we can make a finding that it was petitioner's intention to permanently reside in the United States, then we must hold that she was a mere transient or sojourner within the meaning of Treasury regulations and was not a resident of the United States.

For example, petitioner, after reciting the circumstances which caused petitioner to come to the United States in 1940 and to remain here during all the intervening years until she returned to England in 1945 after the war, argues in her brief as follows: "She never renounced her British citizenship or took any steps toward becoming naturalized in the United States." Then further, along the same line, in her reply brief petitioner says: "The principal question is one of fact—Whether Petitioner intended to permanently reside in the United States." Thus it is clear that the gist of petitioner's argument is that in order for a nonresident alien to change his residence to the United States the facts must establish that he intends to permanently reside here. We do not understand such to be the law. If the question were one of change of domicile, that would doubtless be a correct statement of law, but not as to a change in residence.

In the recent case of *Herman Frederick Baehre*, 15 T. C. 236, we had the question as to whether during the period in question the taxpayer,

---

[1] Regulations 111.

Sec. 29.211–1. Taxation of Aliens in General.—For the purposes of chapter 1 alien individuals are divided generally into two classes, namely, resident aliens and nonresident aliens. Resident aliens are in general taxable the same as citizens of the United States, that is, a resident alien is taxable on income derived from all sources including sources without the United States. Nonresident aliens are taxable only on income from sources within the United States. * * *

Sec. 29.211–2. Definition.—A "nonresident alien individual" means an individual—

(a) Whose residence is not within the United States ; and

(b) Who is not a citizen of the United States.

The term includes a nonresident alien fiduciary.

An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient ; but if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances.

a citizen of the United States, had changed his residence from the United States to Canada. We held that under the facts there present the taxpayer had made such a change in residence. It was perfectly clear in that case that at no time did the taxpayer intend to abandon his domicile in the United States and become a permanent resident of Canada. The taxpayer there so conceded. He did contend, however, that during the period in question he was, under the Treasury regulations, more than a mere transient or sojourner in Canada and had become a resident thereof for the period in question. We upheld that contention.

It is appropriate that we point out that the Treasury regulations relating to residence which applied in the *Baehre* case are the same as applicable here and have been printed in the margin. It seems clear to us that it was petitioner's intent, at least from the time she entered the United States from Mexico on May 12, 1941, as a quota immigrant, to become a resident of the United States during the duration of the war and, in fact, did so. We are perfectly well convinced from petitioner's testimony that she did not intend to reside in the United States permanently but that she intended to return to England after the war had ended. These facts, however, for reasons we have already explained, do not serve to alter the fact that petitioner was a resident of the United States during the period in question. We have accordingly found in our findings of fact that: "Petitioner was a resident alien of the United States during 1942, 1943, and 1944 and was taxable as such." The petitioner, in making her contention that during the years here involved she was a nonresident of the United States, strongly relies on *Florica Constantinescu*, 11 T. C. 36, and *Zareh Nubar*, *supra*. We have carefully examined these cases and we think they are clearly distinguishable on their facts. As to this issue of residence, the Commissioner is sustained.

We next take up question 2. We think this question must be answered in the affirmative. It is entirely clear from the evidence that these credits were available to petitioner in blocked British pounds and would have been, if she had chosen, freely expendable anywhere in the sterling area. In fact the parties stipulated at the hearing as follows:

The parties stipulate that during the taxable years here involved, the petitioner could have freely directed the application and expenditure of her salaries and shares of profits from Helena Rubinstein, Ltd., within the sterling area.

It is true that under British law and British Treasury regulations these credits could not have been brought to the United States in cash. But, as we have already said, they were freely expendable by petitioner anywhere in the sterling area and we think that makes them taxable

income to petitioner. See *Eder, et al.* v. *Commissioner*, 138 Fed. (2d) 27; *Max Freudmann*, 10 T. C. 775.

Petitioner, in contending that she should not be taxed on the salaries and profits unconditionally credited to her account in British pounds by Helena Rubinstein, Ltd., of London because she could not bring these credits to the United States in cash, strongly relies on *International Mortgage & Investment Corporation*, 36 B. T. A. 187. We think that case is distinguishable on its facts. In that case the taxable year before us was 1931 and we made a finding of fact, as follows: "There was *no market in 1931* for the restricted marks, and no one could form an opinion as to their value at that time." (Emphasis added.) We have no such situation in the instant case. In each of the taxable years the British blocked pound was freely selling in the New York free market and we have made findings of fact with reference to the prices at which it was selling. We, therefore, overrule petitioner's contention that she had no taxable income from the unconditional crediting to her account of the salaries and profits in blocked British pounds.

This leaves for our decision question number 3. It is our view that the value of the blocked British pound as determined in the free market of the United States should be used as the measure of petitioner's income in each of the taxable years from the salaries and profits which were credited to her account in England.

In *Morris Marks Landau*, 7 T. C. 12, we had essentially the same question as we have here, although that was a gift tax case whereas the instant case is an income tax case. This difference in the cases, we think, makes no difference in the fundamental question involved. In the *Landau* case, the Commissioner, relying upon I. T. 3568, 1942–2 C. B. 112, had determined that in the valuing of the gift, the official rate of the British pound sterling should be used. We said: "We can find no support for respondent in this ruling." We then went on to hold in petitioner's favor. In that case we specifically found that "The official rate of exchange does not apply to 'blocked pounds', i. e., pounds subject to the restrictions imposed by the Emergency Finance Regulations." See our findings of fact in the *Landau* case on page 14. To the same effect is *Estate of Ambrose Fry*, 9 T. C. 503. See also *Weil, Inc.* v. *Commissioner*, 150 Fed. (2d) 950.

The Commissioner has used in his determination of the deficiencies the official rate of exchange of the pound. This, we hold, was error on his part and the free rate of exchange should be used instead. See *Foundation Co.*, 14 T. C. 1333. As to this issue, petitioner is sustained.

Reviewed by the Court.

*Decision will be entered under Rule 50.*