237 F.2d 848
 Jane Smith GREENE, Executor of the Estate of Eva Maxson Smith, Deceased, Plaintiff-Appellee,
v.
UNITED STATES of America and E. J. Sauber, Director of Internal Revenue, Chicago, Illinois, Defendants-Appellants.
 No. 11708.
 United States Court of Appeals Seventh Circuit.
 October 15, 1956.
 Rehearing Denied November 27, 1956.
 
 Charles K. Rice, Asst. Atty. Gen., C. Guy Tadlock, Lee A. Jackson, Hilbert P. Zarky, Arthur I. Gould, Attorneys, Tax Division, U. S. Department of Justice, Washington, D. C., Robert Tieken, U. S. Atty., Chicago, Ill., for appellants.
 Frank R. Reid, Jr., Aurora, Ill., Robert B. Hupp, Aurora, Ill., Reid, Ochsenschlager & Murphy, Aurora, Ill., for appellee.
 Before MAJOR, FINNEGAN and SWAIM, Circuit Judges.
 SWAIM, Circuit Judge.
 
 
 1
 This is an action for an estate tax refund brought by the "executor" of the estate of Eva Maxson Smith. A judgment was entered in favor of the plaintiff-taxpayer whereupon the Government prosecuted this appeal.
 
 
 2
 On December 31, 1934, the following agreement was entered into between Eva Maxson Smith (hereinafter referred to as the decedent) who was then a resident of the City of Auburn, New York, and her daughter, Jane Smith Greene:
 
 
 3
 "This Agreement made the 31st day of December 1934, between Eva Maxson Smith of the city of Auburn, County of Cayuga, State of New York, party of the first part, and Jane Smith Greene of Aurora, State of Illinois, party of the second part, Witnesseth:
 
 
 4
 "That Whereas, Eva Maxson Smith is the owner of the following chattels or items of personal property consisting of bonds, stocks, mortgages and cash as are more fully described and set forth in Schedule `A' attached hereto, and
 
 
 5
 "Whereas, she is desirous of conveying and transferring the same to Jane Smith Greene, for a good and valuable consideration,
 
 
 6
 "Now, therefore, it is hereby agreed between the parties hereto that the said Eva Maxson Smith, for a good and valuable consideration hereinafter described, will and she hereby does transfer and convey all of the above described chattels to the said Jane Smith Greene, to be hers absolutely and in consideration of such transfer to her of said above described personal property, the said Jane Smith Greene agrees and contracts with the said Eva Maxson Smith party of the first part that she will manage and care for said above described property to the best of her ability and when deemed best, sell and reinvest said personal property. That she will manage and care for said property and any substitutions therefor to the best of her ability and collect, and care for the interest, dividends and any and all income received therefrom as the same shall become due and pay and deliver over the said interest, dividends and any and all income from said stocks, bonds and mortgages or from any securities substituted therefor and the interest on any uninvested cash there may be resulting therefrom, less the necessary and legal expenses or taxes that may be connected with the management thereof, to the said Eva Maxson Smith monthly during the period of her life. The date of said first payment shall be one month from the date of this instrument and monthly thereafter. And it is further
 
 
 7
 "Agreed and Contracted between the parties hereto that if the total yearly income from said above described personal property, less expenses, etc., for any yearly period shall not amount to the sum of $1500.00, that in that event the party of the second part, Jane Smith Greene, shall pay to the said Eva Maxson Smith, party of the first part, on the date of the last monthly payment of any said year, a sufficient sum of money (in addition to said income as aforesaid) to make the yearly income for said year equal to the sum of $1500.00.
 
 
 8
 "The stipulations and agreements herein are to apply to and bind the heirs, executors, administrators, successors, and assigns of the respective parties."
 
 
 9
 Pursuant to the contract, decedent transferred and delivered to Jane Smith Greene securities and cash having a value as of the contract date of $48,265.15.
 
 
 10
 On December 31, 1934, an identical contract was entered into between the decedent and Georgia H. Saunders, another daughter of decedent. Securities and cash having a value as of that date of $48,262.17 were transferred and delivered by decedent to Mrs. Saunders.
 
 
 11
 The respective securities which were transferred to Mrs. Greene and Mrs. Saunders, the only children of decedent, comprised practically all (95%) of decedent's assets.
 
 
 12
 On March 13, 1935, the decedent filed a federal gift tax return for the year 1934 in which she set forth the contracts with her daughters. In determining the gift tax payable decedent deducted the value of the income interest reserved by her (computed on the basis of her life expectancy) from the total value of the securities and cash transferred to her daughters. In connection with her gift tax return the decedent stated:
 
 
 13
 "My losses have been very heavy and my income has shrunk alarmingly. I desire the security of a guaranteed minimum income as provided by contracts with my daughters (copies of contracts attached hereto), and I desire further to place the responsibility for further management of the estate into the hands of my daughters or their husbands."
 
 
 14
 The property transferred by decedent to her daughters was at the time of the transfer producing and each year since has produced an annual income in excess of $3,000.00. Therefore it never became necessary for the daughters to invade the corpus of the property transferred to them, or to use any of their personal funds to meet the annual income of $3,000.00 guaranteed to their mother by the contracts.
 
 
 15
 The income, as it accrued, was deposited in the individual bank accounts of each of the two daughters and later paid by them each month to decedent, pursuant to the terms of the contracts.
 
 
 16
 The decedent was approximately 81 years of age and in good health when the contracts were executed. According to the applicable American Annuitance Mortality Tables, the life expectancy of decedent on December 31, 1934, was 7.08 years.
 
 
 17
 The decedent died testate on June 25, 1949. On September 22, 1950, the plaintiff, as executrix of decedent's estate, filed the estate tax return. The property transferred to the daughters was not included in the return as a part of the decedent's estate.
 
 
 18
 A deficiency in the estate tax of decedent was asserted by the Commissioner, and the asserted deficiency was paid under protest. The deficiency was based on the claim that the property transferred by decedent to her daughters constituted a part of decedent's gross estate for estate tax purposes. Plaintiff-appellee's claim for refund was denied by the Commissioner.
 
 
 19
 The problem presented by this case is whether the decedent reserved to herself for life the right to the income from the securities transferred to her daughters and, if so, whether the transfers were bona fide sales for an adequate and full consideration in money or money's worth.
 
 
 20
 The District Court concluded that the transfers were bona fide sales for adequate and full consideration in money or money's worth and that no part of the securities should have been included in decedent's gross estate.
 
 
 21
 The applicable statutory provision is Section 811 of the 1939 Internal Revenue Code, 26 U.S.C. § 811 (1952 Ed.):
 
 
 22
 "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States —
 
 
 23
 * * * * *
 
 
 24
 "(c) [As amended by Section 7 (a) of the Technical Changes Act of 1949.]
 
 
 25
 "Transfers in contemplation of, or taking effect at, death.
 
 
 26
 "(1) General rule. To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise —
 
 
 27
 * * * * *
 
 
 28
 "(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; or
 
 
 29
 * * * * *
 
 
 30
 "(i) Transfers for insufficient consideration. If any one of the transfers, trusts, interests, rights, or powers, enumerated and described in subsections (c), (d), and (f) is made, created, exercised, or relinquished for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent."
 
 
 31
 Section 811(c) (1) (B) provides for the inclusion in the gross estate of the decedent all inter vivos transfers made by a decedent, by trust or otherwise, whereby such decedent retains for his life the right to receive the income from the property transferred, except where the transfer is a bona fide sale for an adequate and full consideration in money or money's worth. The purpose of this portion of the Act is to impose an estate tax upon property transferred during life where the transferor still retains the economic benefit of the property. Commissioner of Internal Revenue v. Wilder's Estate, 5 Cir., 118 F.2d 281, certiorari denied 314 U.S. 634, 62 S.Ct. 67, 86 L.Ed. 509.
 
 
 32
 The promise of the daughters was to "pay and deliver over said interest, dividends and any and all income from said stocks, bonds and mortgages or from any securities substituted therefor and the interest on any uninvested cash * * * to the said Eva Maxson Smith monthly during the period of her life." (Emphasis added.)
 
 
 33
 This clearly brings the transfer within Section 811(c) (1) (B). Harter v. United States, decided December 29, 1954, D.C.N.D.Okla. (48 A.F.T.R. 1964; 2 C.C.H. Estate and Gift Tax Reporter, p. 8007); cf. Estate of Fry v. Commissioner, 9 T.C. 503.
 
 
 34
 From the viewpoint of the transferor the most significant effect of this transaction was her retention of the income until her death. The decedent was the sole owner of the securities before the transfer, and after the transfer she retained "[p]robably their greatest property value," i. e., the continuing right to receive the income therefrom. See Commissioner of Internal Revenue v. Estate of Church, 335 U.S. 632, 644, 69 S.Ct. 322, 93 L.Ed. 288. As was said in Estate of Shearer v. Commissioner, 17 T.C. 304, at pages 307, 308, "The situation is not substantially different for estate tax purposes from one in which a decedent transfers a remainder directly and retains a life estate, a situation clearly within Section 811(c) (1) (B)."
 
 
 35
 The taxpayer insists that the transfers in question were not in trust and gave the decedent a mere contractual right against her daughters, and thus, did not amount to a retention of income for life.
 
 
 36
 It is not necessary that the transfers be given any particular legal characterization. Section 811(c) (1) encompasses transfer by "trust or otherwise." See Commissioner of Internal Revenue v. Wilder's Estate, 5 Cir., 118 F.2d 281, certiorari denied 314 U.S. 634, 62 S. Ct. 67; Estate of Shearer v. Commissioner, 17 T.C. 304; Estate of Fry v. Commissioner, 9 T.C. 503; Harter v. United States, decided December 29, 1954, D.C.N.D.Okla. (48 A.F.T.R. 1964; 2 C.C.H. Estate and Gift Tax Reporter, at p. 8007).
 
 
 37
 The decisive issue is whether, looking to substance and not merely to form, the decedent had retained for her life the right to the income from the property transferred.
 
 
 38
 Even though the daughters had possession and control of the securities and received the income therefrom prior to its payment to decedent they did not have beneficial possession or enjoyment until the transferor's death. Commissioner of Internal Revenue v. Estate of Church, 335 U.S. 632, 69 S.Ct. 322; cf. United States v. Goodyear, 9 Cir., 99 F.2d 523. Until that time they were neither able to retain nor to enjoy the income from the securities.
 
 
 39
 This arrangement is comparable to transferring the securities to a third party who would pay the income as earned to decedent for life and thereafter pay the principal to the daughters. Matters of form do not cause a difference in tax consequences when substance dictates otherwise.
 
 
 40
 Further, decedent's own understanding of the nature of the transaction, as revealed by her gift tax return during the year 1934, indicates that she reserved a life income interest in the property transferred to her daughters. As noted above, in determining the gift tax payable on the 1934 transfers, decedent deducted the value of the income interest reserved by her from the total value of the securities and cash transferred to her daughters. The value of the interest retained by her was computed on the basis of her life expectancy — the accepted method of valuing a life interest or life estate.
 
 
 41
 Therefore, the value of the securities was properly included in the gross estate of decedent unless there was another basis for their exclusion. The plaintiff contends, and the District Court found, that these transfers constituted "a bona fide sale for an adequate and full consideration in money or money's worth," and therefore were expressly excepted from the requirement that the value of the property here transferred be included as a part of decedent's gross estate. 26 U.S.C. § 811(c) (1).
 
 
 42
 The obligation of the daughters to pay to the decedent the income earned by the transferred property is obviously not such consideration as described in the exception to the statute. However, the daughters, in their contracts with the mother, undertook in any year when the income fell below $3,000.00 to pay the decedent a sufficient sum to make up the difference. This appears to be the only possible consideration in money or money's worth that the decedent might have received under the contracts. But under the facts as shown by the evidence this contingency never arose. However, the plaintiff insists that the contractual obligation of the daughters, both of whom were financially responsible, to pay any possible deficiency in the $3,00.00 annual income constituted "money or money's worth" within the meaning of the Act, and points out that the decedent on the date of the transfer would have had to pay approximately $23,000.00 for a commercial annuity paying her $3000.00 per month for the rest of her life. But such an annuity contract would have been an absolute obligation to pay each month for as long as the annuitant lived.
 
 
 43
 The taxpayer insists that the finding of the District Court that the transfer was a bona fide sale for an adequate and full consideration in money or money's worth cannot be set aside unless clearly erroneous. We think that finding was clearly erroneous.
 
 
 44
 While there was conflicting evidence on the question of how much it would have cost the decedent on December 1, 1934, the time of these transfers, to have purchased a commercial annuity which would have paid decedent $3,000.00 per year, payable in monthly installments, for the remainder of her life and while, as we have pointed out above, a commercial annuity policy would constitute an absolute obligation to make such payments rather than a contingent obligation such as we are here considering, the evidence may have been sufficient to support a finding that in this case there was some consideration in "money or money's worth" for the transfers. It would seem to be perfectly clear, however, that such consideration could not have constituted "full and adequate consideration" for the transfer of property having a value of more than $96,000.00 on the date the transfers were made.
 
 
 45
 There is a provision in Section 811 of the 1939 Internal Revenue Code which provides that where a transfer is made "for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death * * * over the value of the consideration received therefor by the decedent."
 
 
 46
 The judgment is reversed and the cause remanded to the District Court to determine the excess of the fair market value of the transferred property at the time of decedent's death over the value in money or money's worth, if any, of the contingent annuity agreements of the daughters.