Estate of Daniel McNichol, Deceased, Ellen McN. Evangelista and Joseph G. McNichol, Executors, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 60127. Filed March 28, 1958.

*James J. Regan, Jr., Esq.*, for the petitioner.
*George H. Bowers, Jr., Esq.*, for the respondent.

Train, *Judge:* The Commissioner determined a deficiency in estate tax of $21,688.43 and an addition to tax for delinquency of $2,814.20.

The primary issue is whether certain income-producing real estate is includible in the decedent's gross estate under section 811 (c) (1) (B) of the Internal Revenue Code of 1939.

A second issue is whether petitioner is entitled to a credit under section 813 (b) of the 1939 Code against the Federal estate tax for inheritance taxes paid to the Commonwealth of Pennsylvania.

### FINDINGS OF FACT.

Some of the facts are stipulated and are hereby found as stipulated.

Ellen McNichol Evangelista and Joseph G. McNichol are the executors of the Estate of Daniel McNichol who died testate, a resident of Philadelphia, Pennsylvania, on June 17, 1951.

The Federal estate tax return was filed with the collector of internal revenue for the first district of Pennsylvania at Philadelphia, Pennsylvania, on October 31, 1952.

During the period 1939 to 1942, Daniel McNichol (hereinafter referred to as the decedent) executed general warranty deeds, covering various income-producing real properties in Philadelphia, to his children as grantees. All of the grantees were sons and daughters of the decedent. The following table shows the properties conveyed, the date of execution of the deeds, the date of filing in the Office for the Recording of Deeds in and for the City and County of Philadelphia, and the names of the grantees:

| Properties | Date executed | Date filed | Grantees |
|---|---|---|---|
| 6200–02 Grays Ave., 2412 South 62d St., 2414 South 62d St. | Dec. 30, 1939 | Jan. 5, 1940 | Joseph G. McNichol, Henry J. McNichol |
| 2439 South 62d St., 2443 South 62d St., 6167 Elmwood Ave. | Apr. 30, 1940 | May 11, 1940 | John J. McNichol |
| 7000 Paschall Ave_____ | Nov. 6, 1941 | Nov. 12, 1941 | James J. McNichol, Rose Mary McNichol, Ellen Martha McNichol, (now Ellen M. Evangelista) |
| 6167, 6169, 6171 Grays Ave_____ | Feb. 19, 1942 | Mar. 19, 1942 | James J. McNichol, Rose Mary McNichol, Ellen Martha McNichol (now Evangelista) |

The first two of the above deeds, those executed December 30, 1939, and April 30, 1940, were prepared at the decedent's request by his attorney, Joseph P. Breslin. Breslin prepared the deeds and mailed them to the decedent for his execution. The decedent then returned the deeds to Breslin who, after having them recorded, returned them to the decedent.

The second two of the above deeds, those executed November 6, 1941, and February 19, 1942, were prepared at the decedent's request by a realtor, Robert C. Young. In each case, the decedent gave Young the old deed to the real estate in question and the names of the new grantees. After Young prepared the deeds, he returned them to the decedent.

After all of these deeds were executed, recorded, and returned to the decedent by Breslin and Young, the decedent placed them in his safe in his house at 7006 Paschall Avenue, Philadelphia, Pennsylvania, and the deeds remained in his possession until after his death on June 17, 1951. The decedent and Ellen McNichol Evangelista were the only two persons who had access to the decedent's safe.

No gift tax returns for the years 1939 to 1942, inclusive, were ever filed by the decedent. No gift tax returns have ever been filed by Ellen McNichol Evangelista.

The various parcels of real estate conveyed by the deeds had a fair market value at the time of the decedent's death on June 17, 1951, as follows:

| Real estate | Fair market value June 17, 1951 |
|---|---|
| 6167 Grays Avenue, Philadelphia, Pa_____ | $5,750 |
| 6169 Grays Avenue, Philadelphia, Pa_____ | 5,700 |
| 6171 Grays Avenue, Philadelphia, Pa_____ | 12,000 |
| 6200–02 Grays Avenue, Philadelphia, Pa_____ | 15,000 |
| 2412 South 62d Street, Philadelphia, Pa_____ | 7,500 |
| 2414 South 62d Street, Philadelphia, Pa_____ | 8,000 |
| 2439 South 62d Street, Philadelphia, Pa_____ | 5,200 |
| 2443 South 62d Street, Philadelphia, Pa_____ | 6,000 |
| 6167 Elmwood Avenue, Philadelphia, Pa_____ | 8,250 |
| 7000 Paschall Avenue, Philadelphia, Pa_____ | 7,000 |

Contemporaneously with and subsequent to the execution of the above deeds, it was understood by all of the grantees named therein that the decedent would retain for his lifetime the income from all of the real estate in question. All of the real estate was continuously rented from the date of execution of each deed to the time of the decedent's death on June 17, 1951, and thereafter. During the years 1941 to 1950, inclusive, W. A. Gray, Inc., collected the rents from the real estate at 2439 South 62d Street, and at 6169 and 6171 Grays Avenue, for the account of the decedent and remitted the rents to him by check. The decedent deposited these rents in his personal checking account at the City National Bank in Philadelphia. During the years 1940 to 1951, Robert C. Young collected the rents from the real estate at 6167 Elmwood Avenue for the account of the decedent and personally remitted the rents to him. During the period from 1939 to the time of decedent's death on June 17, 1951, Mrs. Joseph McNichol collected the rents from the properties located at 6200–02 Grays Avenue and at 2412 and 2414 South 62d Street.

The decedent, in his individual Federal income tax returns for the years 1948 to 1950, inclusive, and the period from January 1, 1951, to the time of his death on June 17, 1951, reported the rental income from *all* the real estate described above *as his income*, and in the same returns for those years claimed depreciation on improvements to the real estate, and deducted expenses for taxes, water, etc., in computing the net rental income. Prior to the decedent's death, none of his children who were the grantees of the various deeds described above ever received any rental income whatsoever from the properties in question.

On February 15, 1946, James J. McNichol executed a general warranty deed to the decedent, which deed covered his interest in the real estate at 6167, 6169, and 6171 Grays Avenue. This deed was duly filed in the Office for the Recording of Deeds in and for the City and County of Philadelphia, Pennsylvania, on February 25, 1946. The deed was prepared at the decedent's request by his attorney, Joseph P. Breslin. Breslin prepared the aforesaid deed and mailed it to James J. McNichol for his execution. James J. McNichol then returned the deed to Breslin who, after having it recorded, sent the deed to the decedent.

The decedent, in accordance with the "understanding" referred to above, actually received *all* the rental income from the real estate in question from the dates the deeds were executed between 1939 and 1942 to the time of his death on June 17, 1951. The real estate described above is includible in the decedent's gross estate under section 811 (c) (1) (B) of the Internal Revenue Code of 1939.

OPINION.

The respondent maintains that the real estate involved in this proceeding is includible in the gross estate of the decedent under section 811 (c) (1) (B) of the Internal Revenue Code of 1939 on the ground that decedent retained for his life the income from the real estate.

The petitioner contends that section 811 (c) (2) of the 1939 Code excludes the real estate in question from the decedent's estate because it involved a transfer made prior to October 8, 1949, and also that decedent did not, either in fact or law, retain the income from the real estate.

We agree with the respondent.

Section 811 (c) (1) and (2), which are here involved, are set forth in the margin.[1]

Section 811 (c) (2), upon which petitioner relies, only qualifies and limits the application of section 811 (c) (1) (C). By its own terms, it is inapplicable to subparagraph (B) under which respondent de-

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

* * * * * * *

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT, DEATH.—

(1) GENERAL RULE.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

(A) in contemplation of his death ; or

(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom ; or

(C) intended to take effect in possession or enjoyment at or after his death.

Subparagraph (B) shall not apply to a transfer made before March 4, 1931 ; nor shall subparagraph (B) apply to a transfer made after March 3, 1931, and before June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516.)

(2) TRANSFERS TAKING EFFECT AT DEATH—TRANSFERS PRIOR TO OCTOBER 8, 1949.— An interest in property of which the decedent made a transfer, on or before October 7, 1949, intended to take effect in possession or enjoyment at or after his death shall not be included in his gross estate under paragraph (1) (C) of this subsection unless the decedent has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer and not by operation of law, and the value of such reversionary interest immediately before the death of the decedent exceeds 5 per centum of the value of such property. For the purposes of this paragraph, the term "reversionary interest" includes a possibility that property transferred by the decedent (A) may return to him or his estate, or (B) may be subject to a power of disposition by him, but such term does not include a possibility that the income alone from such property may return to him or become subject to a power of disposition by him. The value of a reversionary interest immediately before the death of the decedent shall be determined (without regard to the fact of the decedent's death) by usual methods of valuation, including the use of tables of mortality and actuarial principles, pursuant to regulations prescribed by the Commissioner with the approval of the Secretary. In determining the value of a possibility that property may be subject to a power of disposition by the decedent, such possibility shall be valued as if it were a possibility that such property may return to the decedent or his estate.

termined the deficiency. Transfers made prior to October 8, 1949, may be included in the decedent's gross estate if they otherwise fall within the provisions of section 811 (c) (1) (B).

Petitioner also cites Pennsylvania law to the effect that decedent had by the general warranty deeds conveyed away all of his right, title, and interest in the real estate described therein. We do not question that, under applicable Pennsylvania law, this was the effect of the deeds and that presumably the grantees had a right to the rents which they could have enforced, had they so desired.

However, section 811 (c) (1) (B), to the extent here relevant, requires the inclusion in a decedent's estate of any interest of which he has at any time made a transfer under which he has retained for his life "the possession or enjoyment of, or the right to the income from, the property * * *." These statutory tests for inclusion are stated in the alternative. Thus, property transferred will be included in a decedent's estate if in fact the decedent retained possession or enjoyment thereof for his life, regardless of whether, in the case of income-producing property, he had a legal right to the income.

Moreover, in order for section 811 (c) (1) (B) to apply, the life interest retained by the decedent need not be created by the express terms of the instrument of transfer. If such a retained interest were in fact set out and provided for in the instrument proper, it could be supposed, in the case of income-producing property, that the transferor would have a "right" to the income within the meaning of section 811 (c) (1) (B). However, as we have pointed out, the statutory tests for inclusion are set out in the alternative. Since Congress has established "possession or enjoyment" of the property as an alternative test to the "right" to the income, we construe the provision to mean that "possession or enjoyment" is to be determined as a matter of fact and not on the basis of a construction, either express or implied, of the words of the instrument of transfer.

The above conclusions are in accord with the statement of the court in *Harter* v. *United States*, an unreported case (N. D. Okla., 1954; 48 A. F. T. R. 1964, 55-1 U. S. T. C. par. 11503), where it was stated:

> The language of this section (Section 811 (c) (1) (B)) does not contemplate, as taxpayer has contended, that the retained interest must be set out and provided for in the instrument of transfer, nor does the language of that section require that the retained interest must be one that could be enforced against an objecting transferee. Rather, Section 811 (c) (1) (B) poses a factual test. Under the clearly apparent facts in this case the decedent retained what amounted to a life interest in the property, and the property falls within his gross estate under the provisions of Title 26, U. S. C. A. Section 811 (c) (1) (B).

Cf. *Estate of George L. Shearer*, 17 T. C. 304 (1951); *Estate of Ambrose Fry*, 9 T. C. 503 (1947); *Estate of Cornelia B. Schwartz*, 9 T. C. 229 (1947).

The purpose of section 811 (c) (1) (B) is to impose an estate tax upon property transferred during life where the transferor still retains the "economic benefit" of the property. *Greene* v. *United States*, 237 F. 2d 848 (C. A. 7, 1956), rehearing denied November 27, 1956. In the case of income-producing property, there could be no clearer example of the retention of such an economic benefit than the retention of the income itself. Possession or enjoyment of the property exists, within the meaning of section 811 (c) (1) (B), where the property involved was income-producing property and the deceased received the income therefrom, whether the deceased did so by virtue of the instrument of transfer or by the acquiescence of the transferee.

In the instant case, there was a clear understanding between the decedent and his children that he would continue to receive all of the rents from the properties in question so long as he lived. Moreover, irrespective of the existence of an understanding or agreement to that effect, the circumstances of this case demonstrate conclusively that the decedent did in fact receive all the rents until his death and his children interposed no objection. Petitioner argues on brief that these rents were actually gifts to the decedent from the children. There is no evidence in support of such an argument. In fact, all of the evidence leads to a contrary conclusion. The deeds were returned to the decedent following their execution. He kept the deeds in his own personal safe. All of the rents were paid directly to him. He treated the rents as his own income at all times.

From all the facts, it is clear that the decedent retained for his life the possession or enjoyment of the properties in question. Thus, respondent did not err in including the value of those properties in decedent's gross estate.

While the petition assigned error with respect to the respondent's valuation of the properties involved, the question of valuation has been settled by stipulation and the agreed values are set forth in our Findings of Fact.

The petition assigned no error with respect to the respondent's determination of an addition for delinquency in the amount of $2,814.20.

Respondent agreed at the trial and declared in his brief that petitioner will be allowed a credit against the Federal estate tax for inheritance taxes paid to the Commonwealth of Pennsylvania under Rule 50 if evidence of the payment of said inheritance taxes is submitted in accordance with the requirements of section 81.9 of Regulations 105 promulgated under section 813 (b) of the 1939 Code.

*Decision will be entered under Rule 50.*