Mohamed Z. El-Sabban and Effat I. El-Sabban v. Commissioner.
El-Sabban v. Commissioner
Docket No. 5250-70 SC.
United States Tax Court
T.C. Memo 1971-105; 1971 Tax Ct. Memo LEXIS 223; 30 T.C.M. (CCH) 453; T.C.M. (RIA) 71105; May 17, 1971, Filed. Mohamed Z. El-Sabban, pro se, 4253 Brampton Drive, Bridgeton, Mo. Thomas J. Stevens, for the respondent. STERRETT
Memorandum Findings of Fact and Opinion STERRETT, Judge: Respondent determined a deficiency of $649.06 in petitioners' income tax for the taxable year 1968. The question presented is whether each petitioner's respective mother was a resident of the United States during the year in issue, thus entitling the petitioners to dependency exemptions and medical expense deductions for the two women. Findings of Fact Some of the facts were stipulated. The stipulation and the exhibits attached thereto are incorporated herein by this reference. *224 Mohamed Z. El-Sabban (hereinafter referred to as Mohamed) and Effat I. Fll-Sabban (hereinafter referred to as Effat) are husband and wife, and at the time of filing their petition herein resided in Bridgeton, Missouri. They filed their joint Federal income tax return for the taxable year 1968 with the district director of internal revenue, Austin, Texas. During 1967 and 1968, petitioners resided in Bartlesville, Oklahoma. At all times relevant hereto petitioners were citizens of the United Arab Republic. Since July 10, 1967, petitioners' legal status in the United States has been that of permanent residents, as defined in the Immigration and Nationality Act, 8 U.S.C., sec. 1101 (a)(20), (31), and (33). Mohamed's mother, Zahira El-Sabban (hereinafter referred to as Zahira), was born in Cairo, Egypt in 1902 and was 66 years of age in 1968. Effat's mother, Farida El-Sabban (hereinafter referred to as Farida), was born in Cairo, Egypt, in 1899 and was 69 years of age in 1968. Both Zahira and Farida, during the period in issue, were citizens of the United Arab Republic, and neither of them could speak or write English. The two women are sisters. In November *225 of 1967, Zahira and Farida flew from Egypt. Each of them possessed a round trip ticket. They arrived in the United States on November 26, 1967, and lived with the petitioners in Bartlesville, Oklahoma. Zahira and Farida each entered the United States on a temporary visitor's visa, known as a B-2 visa. While in the United States both Zahira and Farida had the status of nonimmigrant alien as defined in the Immigration and Naturalization Act, 8 U.S.C., sec. 1101(a)(15)(B). Under their original visas Zahira and Farida were permitted to remain in the United States until May 25, 1968. They were both granted extensions of their visas until November 25, 1968. On August 11, 1968, after having been in the United States for 8 1/2 months, Zahira and Farida flew back to Egypt. Zahira and Farida could have requested further extensions of their visas. However, there is no assurance that extensions would have been granted. Any extension would have normally been for 6 months and, under any circumstances, a definite termination date for the visas would have been set. While in the United States neither Zahira nor Farida filed a declaration of intention to become a citizen, *226 nor did they apply for permanent resident visas. In addition, neither of them filed a Form 1078, Certificate of Alien Claiming Residence in the United States. Mohamed has two brothers living in Egypt, both of whom have children. Prior to coming to the United States, Zahira lived with Mohamed, while he was in Egypt, or with one of his brothers. After Mohamed left for the United States, Zahira continued to live with her other two sons. Upon her return to Egypt from the United States in 1968, Zahira resumed living with her two sons. Farida has a daughter, two sons, and grandchildren living in Egypt. Farida maintained her own apartment in Cairo prior to coming to the United States. While in the United States during 1967 and 1968, she continued to rent the apartment in Cairo. Upon her return to Cairo in August of 1968, Farida resumed living in her apartment. When Zahira and Farida came to the United States they did not bring any of their possessions such as furniture. During their stay in the United States they were not employed, earned no income, and filed no tax returns. Other than petitioners and 455 their children, Zahira and Farida had no other relatives in the United States. *227 Petitioners invited Zahira and Farida to the United States so that the women could be examined and treated for their heart conditions at the Methodist Hospital in Houston, Texas. The Methodist Hospital in Houston is widely known for the outstanding care it can make available to heart patients. Petitioners did not know the specific nature of Zahira's and Farida's medical condition, but rather had them come to the United States so that their ailments could be accurately diagnosed and, if necessary, treated at the Methodist Hospital. Zahira and Farida did not seek to obtain the permission of the United Arab Republic Government to leave Egypt for the purpose of receiving medical care, rather they left as tourists because this was the easiest way to get out of the country. Had they applied to leave for medical reasons, their request would have been examined by a body of specialists convened by the United Arab Republic Government. Applications are very rarely approved by such bodies because they are desirous of protecting the prestige of the indigenous medical profession. Additionally, if a departure for medical reasons where approved, Zahira and Farida would have been entitled to take *228 with them funds sufficient to cover the costs of the care they would receive. Since the United Arab Republic was experiencing a shortage of hard currency, and wished to discourage the transfer of funds, a request to go abroad for medical care would likely have been denied. If an application to leave for medical reasons had been denied, efforts to leave for any other reason would have been very complicated. Thus, to avoid the risk of failure, Zahira and Farida did not request to leave Egypt for medical reasons. On December 8, 1967, 11 days after their arrival in the United States, Zahira and Farida were taken to the Methodist Hospital in Houston, which was 700 miles from Bartleville. Farida was admitted to the hospital as an inpatient and remained there for 10 days. Zahira was an outpatient during that time. By the end of the 10-day period, doctors at the hospital had diagnosed Zahira's and Farida's condition, and determined that surgery was not warranted. A reevaluation of their conditions was to be made within 2 or 3 months. The women were placed on medication and put under the care of a Dr. Williams in Bartlesville, who also treated them for other ailments, such as diabetes. Zahira *229 and Farida remained under Dr. Williams' care until they left the United States in August, 1968. The parties have stipulated that petitioners, in 1968, spent $798.39 on medical care for Zahira and $868.92 on medical care for Farida, and in the same year provided over one-half of the total support for each woman. On their joint Federal income tax return for 1968, petitioners deducted as part of their medical expenses the total amount spent by them for Zahira's and Farida's medical care, and claimed each woman as a dependent. In a statutory notice dated May 14, 1970, respondent disallowed the claimed medical expenses and dependency exemptions on the grounds that petitioners had not established that Zahira and Farida were resident aliens during 1968. Opinion We must determine whether petitioners Mohamed Z. El-Sabban and Effat I. El-Sabban are entitled to claim dependency exemptions in their 1968 return for their respective mothers Zahira El-Sabban and Farida El-Sabban, who were aliens during that year. To make this determination it is necessary that we ascertain whether the women were resident aliens during 1968. [1] A determination of this issue will be dispositive of the question *230 of whether 456 petitioners can deduct medical expenses incurred by Zahira and Farida. [2] The parties have stipulated that petitioners provided over one-half the support for Zahira and Farida, and that they expended $798.39 and $868.92 on medical care for Zahira and Farida, respectively. *231 Whether an alien is a resident of the United States for purposes of the Federal income tax is largely determined according to the facts and circumstances of each case, and the intent of the alien involved. Rudolf Jellinek, 36 T.C. 826, 834 (1961); Ceska Cooper, 15 T.C. 757, 762 (1950). Since Zahira and Farida have long since departed from the United States, their testimony is not available and we must make our determination solely from the objective evidence available in the record. Guides for our determination are provided by the principles and presumptions contained in respondent's Income Tax Regs., sections 1.871-2 and 1.871-4, [3] which we have previously cited with approval. William E. Adams, 46 T.C. 352, 358 (1966). *232 Zahira and Farida did not file declarations of intention to become citizens, nor did either of them file a Form 1078 or its equivalent any of which, under sec. 1.871-4 (c)(2), Income Tax Regs., would be proof of residence. Thus the presumption that the women were nonresident aliens remains unrebutted unless it can be shown that their acts and statements signal a different intent, or that their stay was so long as to constitute residence. Section 1.871-4, Income Tax Regs.
The women remained in this country for approximately 8 1/2 months which, in itself, is not a long period of time. Additionally they were present in the United States under authority of a visitor's visa, which originally gave them the right to remain for 6 months, but was extended for another 6 months. The granting of further extensions was by no means assured. Consequently, it appears that the stay in the United States of Zahira and Farida was limited to a definite period by the immigration laws, and that they were nonresident aliens within the meaning of section 1.871-2(b) of the Income Tax Regs. Rolf Jamvold, 11 T.C. 122, 127 (1948). Petitioners claim, however, that Zahira's and Farida's need for *233 medical care created exceptional circumstances within the meaning of section 1.871-2(b), Income Tax Regs., overriding the presumption raised by the limited visas possessed by the women. Additionally, it is asserted that the need for medical care was a purpose which made an extended stay in the United States necessary. Zahira and Farida, who both had heart conditions, left Egypt with the general notion of consulting medical authorities at the Methodist Hospital in Houston, Texas, 457 and submitting to whatever care might be prescribed as a result of a diagnosis made at the Methodist Hospital. As of that point in time it could not accurately be said that the purpose of the women in coming to the United States was such as might require an extended stay. To the extent that the purpose of Zahira and Farida in being in the United States was medical, the degree to which that purpose might have required an extended stay could not have been determined until their conditions had been diagnosed. The mere fact of coming to the United States to see a doctor with the speculative possibility that care might be provided over an extended period of time does not establish residence. After Zahira *234 and Farida were examined at Methodist Hospital in December, 1967, they were placed on medication and put under the supervisory care of a doctor in Bartlesville, Oklahoma, where petitioners lived. This arrangement continued until such time as the two women left the United States in August, 1968. The facts of record do not support an inference that Zahira's and Farida's need for the type of medical care they were getting was so exceptional they were bound to stay in the United States, and that their conditions were such as to make it impossible for them to depart, and thereby create a likelihood their limited visas would be extended. Accordingly, petitioners have not demonstrated the existence of such exceptional circumstances as would establish the fact of residency for Zahira and Farida despite their right to remain in the United States being limited in time. Also, from this it follows that the women did not have a purpose which necessitated an extended stay in the United States. Commissioner v. Nubar, 185 F. 2d 584, 587-588 (C.A. 4, 1950), reversing 13 T.C. 566 (1949); cf., Swenson v. Thomas, 164 F. 2d 783, 784-785 (C.A. 5, 1947), reversing *235 68 F. Supp. 390 (N.D. Tex., 1946). Both Zahira and Farida were elderly. With the exception of petitioners and their immediate family, all the relatives of both women remained in Egypt. Neither woman could speak English and there is nothing in the record to indicate they were attempting to learn. During the course of her stay, Farida retained her apartment in Cairo, and returned to that apartment after her stay. Thus there was not developed on the part of the women such community ties as would indicate some permanent attachment to this country. Such attachment is a necessary feature of being a resident. Rudolf Jellinek, supra, at 834; Joyce de la Begassiere, 31 T.C. 1031, 1036 (1959), affirmed per curiam 272 F. 2d 709 (C.A. 5, 1959). Having due regard for the presumption of nonresidence for aliens, and considering the facts and circumstances of this case, we decide that Zahira and Farida were not resident aliens during 1968, and thus that petitioners are not entitled to a dependency exemption for either of the women and, also, are not entitled to deduct the medical expenses incurred by Zahira and Farida in 1968. In accordance *236 with the foregoing, Decision will be entered for the respondent. Footnotes
1. SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS. (a) Allowance of Deductions. - In the case of an individual, the exemptions provided by this section shall be allowed as deductions in computing taxable income. * * * (e) Additional Exemption for Dependents. - (1) In general. - An exemption of $600 for each dependent (as defined in section 152) - * * * SEC. 152. DEPENDENT DEFINED. (a) General Definition. - For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer): * * * (4) The father or mother of the taxpayer, or an ancestor of either, * * * (8) A son-in-law, daughter-in-law, father-in-law, mother-in-law, brother-in-law, or sister-in-law of the taxpayer. * * * (b) Rules Relating to General Definition. - For purposes of this section - * * * (3) The term "dependent" does not include any individual who is not a citizen of the United States unless such individual is a resident of the United States, of a country contiguous to the United States, of the Canal Zone, or of the Republic of Panama. * * * ↩
2. SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES. (a) Allowance of Deduction. - There shall be allowed as a deduction the following amounts, not compensated for by insurance or otherwise - (1) the amount by which the amount of the expenses paid during the taxable year * * * for medical care of the taxpayer, his spouse, and dependents (as defined in section 152) exceeds 3 percent of the adjusted gross income, and * * *↩
3. Sec. 1.871-2. Determining residence of alien individuals. * * * (b) Residence defined. - An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. * * * One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but, if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, * * *. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances. Sec. 1.871-4. Proof of residence of aliens. (a) Rules of evidence. - The following rules of evidence shall govern in determining whether or not an alien within the United States has acquired residence therein for purposes of the income tax. (b) Nonresidence presumed. - An alien, by reason of his alienage, is presumed to be a nonresident alien. (c) Presumption rebutted. -* * *. * * * (2) Other aliens. In the case of other aliens, the presumption as to the alien's nonresidence may be overcome by proof - (i) That the alien has filed a declaration of his intention to become a citizen of the United States under the naturalization laws; or (ii) That the alien has filed Form 1078 or its equivalent; or (iii) Of acts and statements of the alien showing a definite intention to acquire residence in the United States or showing that his stay in the United States has been of such an extended nature as to constitute him a resident.↩